## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE U.S. STEEL CONSOLIDATED CASES | Civil Action No. 17-579<br><br>Judge Cathy Bissoon |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO STRIKE THE HARTZMARK REBUTTAL REPORT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL HISTORY ....................................................................................4

III.  ARGUMENT .........................................................................................................6

  A.  Defendants' Thinly-Disguised Surreply Is Procedurally Improper and Should Be Rejected on This Basis Alone ................................................................................................6

  B.  The Opinions in Dr. Hartzmark's Rebuttal Report Properly Rebut Arguments Made by Dr. Zurek and Defendants and/or Elaborate on Topics in Dr. Hartzmark's Opening Report.....8

    1.  Dr. Hartzmark's Rebuttal Opinions Relating to His Damages Methodology Properly Refute Dr. Zurek's Arguments or Elaborate on Topics Contained in His Opening Report ........................................................................................................9

    2.  Dr. Hartzmark's Rebuttal Opinion on Numerosity Rebuts Arguments in Defendants' Opposition Using Evidence from his Opening Expert Report Relied on by Plaintiffs in their Opening Class Brief ............................................................................13

  C.  The "*Pennypack* Factors" Do Not Prescribe Striking the Rebuttal Report........................15

    1.  Defendants Were Neither Surprised Nor Prejudiced by Dr. Hartzmark's Rebuttal Report ........................................................................................................16

    2.  There is No Risk of Disrupting Trial ................................................................18

    3.  Plaintiffs Did Not Act in Bad Faith .................................................................19

    4.  Dr. Hartzmark's Rebuttal Report is Important ...............................................20

IV.  CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co.*,
  167 F.R.D. 668 (D.N.J. 1996) ............................................................................17

*Acticon AG v. China N. E. Petroleum Holdings, Ltd.*,
  692 F.3d 34 (2d Cir. 2012) .................................................................................15

*Barta v. Sears, Roebuck and Co.*,
  307 F. Supp. 2d 773 (E.D. Va. 2004).................................................................17

*Best Med. Int'l, Inc. v. Accuray, Inc.*,
  2010 U.S. Dist. LEXIS 128367 (W.D. Pa. Dec. 2, 2010).....................................8

*Byrd v. Aaron's, Inc.*,
  2017 U.S. Dist. LEXIS 41030 (W.D. Pa. Mar. 22, 2017)...................................12

*Carroll v. Del. River Port Auth.*,
  2014 U.S. Dist. LEXIS 104004 (D.N.J. July 29, 2014)..........................................8

*Ciocca v. BJ's Wholesale Club, Inc.*,
   2011 U.S. Dist. LEXIS 90067 (E.D. Pa. Aug. 12, 2011) ...................................19

*Cook v. Champion Shipping AS*,
  732 F. Supp. 2d 1029 (E.D. Cal. 2010)..............................................................15

*Cotracom Commodity Trading Co. v. Seaboard Corp.*,
  189 F.R.D. 655 (D. Kan. 1999............................................................................7

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D.N.J. 2004) ..................................................................8, 9

*Dow Chem. Co. v. Nova Chems. Corp.*,
  2010 U.S. Dist. LEXIS 50101 (D. Del. May 20, 2010) .....................................11

*Dzielak v. Whirlpool Corp.*,
  2017 U.S. Dist. LEXIS 39232 (D.N.J. Mar. 17, 2017)..............................5, 18, 19

*Emcore Corp. v. Optium Corp.*,
   2008 U.S. Dist. LEXIS 59794 (W.D. Pa. Aug. 5, 2008) ...................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ...........................................................................................15

*FTC v. Innovative Designs, Inc.*,
  2018 U.S. Dist. LEXIS 125809 (W.D. Pa. July 27, 2018)...................................2

*Geib v. James*,
  2007 U.S. Dist. LEXIS 65010 (M.D. Pa. Aug. 31, 2007)................................1, 6

*Haskins v. First Am. Title Ins. Co.*,
  2013 U.S. Dist. LEXIS 138041 (D.N.J. Sep. 26, 2013).....................................11

*Hill v. Reederei F. Laeisz G.M.B.H. Rostock*,
    435 F.3d 404 (3d Cir. 2006) ................................................................................8

*Houser v. Donahoe*,
    Civil Action No. 12-1024 Dkt. No. 24 (W.D. Pa.) ..............................................7

*In re Paoli R.R. Yard Pcb Litig.*,
    35 F.3d 717 (3d Cir. 1994)................................................................................16

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) .............................................................................20

*Kabbaj v. Simpson*,
    2013 U.S. Dist. LEXIS 55582 (D. Del. Mar. 7, 2013).......................................7

*Kline v. First W. Gov't Sec.*,
    1996 U.S. Dist. LEXIS 4019 (E.D. Pa. Mar. 14, 1996).....................................20

*Li v, Aeterna Zentaris*,
    2018 U.S. Dist. LEXIS 37811 (D.N.J. February 28, 2018) ...............................11

*Lucent Techs. Inc. v. Gateway, Inc.*,
    2007 U.S. Dist. LEXIS 36246 (S.D. Cal. May 16, 2007) ..................................11

*Mattern v. City of Sea Isle*,
    131 F. Supp. 3d 305 (D.N.J. 2015) .....................................................................7

*Maynard v. Sugarloaf Twp.*,
    2011 U.S. Dist. LEXIS 54679 (M.D. Pa. May 23, 2011) ..................................20

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
    328 F.R.D. 86 (S.D.N.Y. 2018).........................................................................11

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777
    F.2d113 (3d Cir. 1985)................................................................................3, 20

*Pritchard v. Dow Agro Scis.*,
    263 F.R.D. 277 (W.D. Pa. 2009) ...................................................................8, 10

*Riechhold, Inc. v. U.S. Metals Ref. Co.*,
    2007 U.S. Dist. LEXIS 34284 (D.N.J. May 10, 2007) ........................................9

*Santich v. VCG Hldg. Corp.*,
    2017 U.S. Dist. LEXIS 127024 (D. Colo. Aug. 10, 2017)....................................7

*Smith v. Allstate Ins. Co.*,
    912 F. Supp. 2d 242 (W.D. Pa. 2012).................................................................13

*Smithkline Beecham PLC v. Teva Pharm. United States, Inc.*,
    2007 U.S. Dist. LEXIS 45703 (D.N.J. June 22, 2007) ......................................14

*Taylor v. Amcor Flexibles, Inc.*,
    2011 U.S. Dist. LEXIS 70671 (D.N.J. June 29, 2011) .......................................16

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) ...........................................................................10

*Tyson v. Or. Anesthesiology Grp.*,
  2008 U.S. Dist. LEXIS 44992 (D. Or. June 6, 2008) ........................................... 14

*Withrow v. Spears*,
  967 F. Supp. 2d 982 (D. Del. 2013) ................................................................. 19, 20

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ........................................................................... 16, 20

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i) ................................................................................. 10

Fed. R. Civ. P. 37(c)(1) .......................................................................................... 19

Fed. R. Civ. P. 26(a)(2)(D)(ii) ..................................................................... 5, 10, 19

## I.   INTRODUCTION

Plaintiffs' Motion for Class Certification is now fully briefed and should be granted for the reasons articulated in their motion and supporting papers.[1] Recognizing that the overwhelming evidence and binding legal authority weigh heavily in favor of certifying this Action as a class action, Defendants filed the instant Motion to Strike the Hartzmark Rebuttal Report, which is nothing more than a thinly disguised, improper surreply (the "Surreply") designed to give Defendants the last word on ***Plaintiffs'*** Class Motion.

Defendants did not seek leave of Court to file their Surreply which is, alone, grounds for denial. Moreover, "[r]equests for surreply briefs are ***strongly discouraged.***" Practices and Procedures of Judge Cathy Bissoon, II.C. Surreplies are appropriate only in circumstances not present here where a party raises "new issues or legal bases which are asserted for the first time in a reply brief." *Geib v. James*, 2007 U.S. Dist. LEXIS 65010, at *26 n.3 (M.D. Pa. Aug. 31, 2007).[2] Defendants do not contend Plaintiffs' Reply in Further Support of Class Certification ("Reply") raises any new issues. Rather, they argue Dr. Hartzmark's Rebuttal Report, filed in support, raises new opinions to "fill . . . gaps" in the Hartzmark Opening Report. Not so.

Despite claiming the basis of their Surreply is to strike purported "new" opinions, most of Defendants' arguments respond to Plaintiffs' Reply. Defendants cite only ***one*** paragraph in the Hartzmark Rebuttal Report as purportedly containing a new opinion on damages—¶16. But ¶16 is not "new." It directly contradicts opinions made in the Rebuttal Report of Paul Zurek, Ph.D. ("Zurek Report"), (Dkt. No. 204-1) and elaborates on the damages opinions contained in the

---

[1] Dkt. Nos. 182-84, 205-06. The Expert Report of Michael L. Hartzmark, Ph.D. (the "Hartzmark Opening Report") was attached to the Declaration of Shannon L. Hopkins in Support of Plaintiffs' Motion for Class Certification ("Motion"). Dkt. Nos. 182, 184-1. The Expert Rebuttal Report of Michael L. Hartzmark, Ph.D. ("Hartzmark Rebuttal Report") was attached to the Declaration of Shannon L. Hopkins in Support of Plaintiffs' Reply. Dkt. No. 206-1.

[2] Unless notes otherwise, all emphasis is added and internal citations are omitted.

Hartzmark Opening Report. *C.f.* Hartzmark Opening Report ¶119 (stating Hartzmark could use a "variety of commonly-utilized methods" to disaggregate confounding information) *with* Hartzmark Rebuttal Report ¶16 ("there are a multitude of techniques that could be used to estimate the portion of the price reaction due to the revelation of the truth. These include [listing examples]."). A rebuttal report should not be stricken if it contains merely an elaboration of and is consistent with topics previously addressed in the expert's initial report and is used to rebut the opposing expert's opinions. *See FTC v. Innovative Designs, Inc.*, 2018 U.S. Dist. LEXIS 125809, at *4-8 (W.D. Pa. July 27, 2018) (rebuttal report proper despite "offer[ing] new analysis and calculations" related to topic raised in opening report when used to "rebut and/or contradict the theories posited" by opposing expert as a "rebuttal report [need] simply address the same topic as the affirmative report, as opposed to the same topic *and* methodology the affirmative expert relied on.") (Emphasis in original).

Defendants also cry foul that the Hartzmark Rebuttal Report responded to Defendants' Opposition[3] argument that Plaintiffs failed to put forth sufficient evidence of numerosity. But the purpose of a reply is to respond to arguments made on opposition—which in this instance were bolstered by the Hartzmark Rebuttal Report. Moreover, the Hartzmark Opening Report included the data Plaintiffs relied on in establishing numerosity in their opening class certification motion and which Dr. Hartzmark relied on in formulating his rebuttal opinion. Thus, Dr. Hartzmark's rebuttal opinion is not a "new" topic. Opening Hartzmark Report, ¶¶24-25, 28, 54.

Dr. Hartzmark's Rebuttal Report was timely filed under the Case Management Order ("CMO") and thus could hardly have come as a "significant surprise" (Surreply at 8) to Defendants. If anything, ***it is Plaintiffs who were surprised***. In the Rule 26(f) Joint Report of the

---

[3] *See* Opposition to Plaintiffs' Motion for Class Certification ("Opposition"). Dkt. No. 203.

Parties Pursuant to Appendix LCvR 23.E (Class Action) ("Rule 26(f) Report") (Dkt. No. 160), Defendants struck from the "[s]ubjects on which discovery prior to class certifications is needed," the reference to "(2) the number of potential class members," thereby indicating no discovery was needed to establish numerosity and they did not intend to challenge it.

Defendants also represented in the Rule 26(f) Report that merits discovery should be deferred until after a decision on class certification because the "main issues" for class certification discovery are the now-dismissed Securities Act Claims[4] and "whether a presumption of reliance applies." Dkt. 160 at 5-6. In support of their argument for bifurcated discovery, Defendants represented these two "main issues" did "not meaningfully overlap with merits discovery." *Id.*

To Plaintiffs' surprise, on Opposition, Defendants abandoned their challenge to the "main issue" for class certification. Instead, Defendants challenged numerosity and Plaintiffs' damages methodology on grounds that would necessitate the very ***merits discovery*** they represented to the Court was not required. *C.f.* Rule 26(f) (Dkt. 160 at 6) (the "main issues" at class certification will not "depend[] on whether the challenged statements were true or false") *with* Zurek Rep. ¶31 (establishing "feasibility" of damages model "requires consideration of ***what is alleged to have been misrepresented*** and how those misrepresentations affected the information available to the market"). In any event, as set forth in Plaintiffs' class certification briefing, they have met their burden on damages and numerosity and the Class should be certified.

Finally, even if Dr. Hartzmark's Rebuttal Report includes new theories, an analysis of the "*Pennypack* Factors"[5] weigh in favor of allowing it: (i) Defendants cannot be prejudiced nor surprised by the timely-filed Hartzmark Rebuttal Report that directly rebuts *their* arguments on

---

[4] After the filing of the Rule 26(f) Report, Plaintiffs subsequently dismissed the Securities Act Claims.
[5] Named after *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904‑05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d113 (3d Cir. 1985).

Opposition and Dr. Zurek's Report and, thus, there is nothing to cure; (ii) there is no trial date set

to disrupt; (iii) Plaintiffs have not acted in bad faith; and (iv) the Hartzmark Rebuttal Report goes

to the heart of Plaintiffs' class certification motion and, thus, is important.

## II.    PROCEDURAL HISTORY

Plaintiffs and Defendants negotiated the parameters of their Rule 26(f) Report in January

2019. During the Parties' negotiations, Defendants *deleted* "(2) the number of potential class

members" from the list of "[s]ubjects on which discovery prior to class certification is needed"

indicating no discovery was needed to establish numerosity and that Defendants did not intend to

challenge it. Dkt. No. 160 at 5-6. In the "Defendants' Position" section of the draft Rule 26(f)

Report, Defendants also represented class discovery would *only* be needed for the Securities Act

Claims and to determine whether Plaintiffs are entitled to a class-wide presumption of reliance. *Id.*

According to Defendants, "none" of these issues depended on whether the challenged statements

were false or made with scienter and thus did not warrant merits discovery:

> The main issues for class certification discovery are whether the Section 11
> plaintiffs can trace their purchases to the SPO; whether there is a class-wide basis
> to determine traceability as to putative class members who were open-market
> purchasers; and whether a presumption of reliance applies as to the Section
> 10(b)/Rule 10b-5 claim, under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and
> *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2415 (2014). These
> issues will largely be addressed through experts. None of these issues depends on
> whether the challenged statements were true or false, or were made with bad intent,
> and so they do not meaningfully overlap with merits discovery. Staged discovery
> therefore will promote the efficient handling of this action and potentially preserve
> significant judicial and party resources.

*Id.* Nowhere in the Parties' Rule 26(f) Report do Defendants indicate they intended to challenge

numerosity or Plaintiffs' damages methodology or that more than expert discovery was necessary.

The Court entered the CMO on January 23, 2019 (Dkt. No. 165) requiring that:

6.      Plaintiffs shall submit expert disclosures as to class certification required by Fed. R. Civ. P. 26(a)(2) on or before **April 19, 2019**, and Defendants shall submit expert disclosures as to class certification on or before **June 18, 2019**.

7.      All expert discovery, including all depositions, concerning class certification shall be completed by **July 18, 2019**.

While the CMO did not explicitly provide for a rebuttal report, it is clear (and Defendants do not dispute) the CMO contemplated the submission of the Hartzmark Rebuttal Report with their Reply also due on **July 18, 2019** (*see* CMO at 3)—thirty days after Defendants' Opposition was filed. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (a rebuttal report may be filed "30 days after the other party's disclosure"); *Dzielak v. Whirlpool Corp.*, 2017 U.S. Dist. LEXIS 39232, at *86-87 (D.N.J. Mar. 17, 2017) (holding a rebuttal report was timely submitted when filed within 30 days of opposing report). Otherwise, expert discovery would have ended on June 18, 2019 when Defendants filed their Opposition. Moreover, the CMO stated expert discovery for the remaining 30 days after Defendants' Opposition "include[d]," but was not limited to, "all depositions," further indicating the CMO contemplated a rebuttal expert report. CMO at 2.

In accord with the CMO, Plaintiffs filed their Class Motion and the Hartzmark Opening Report on April 19, 2019. Dkt. Nos. 182-84. The Hartzmark Opening Report opined extensively on the efficiency of the market for U.S. Steel securities and on Plaintiffs' ability to calculate damages on a class-wide basis. In addition, the Hartzmark Opening Report included evidence relating to U.S. Steel securities including shares outstanding and daily trading volume, demonstrating the Class was sufficiently numerous (Hartzmark Opening Report at ¶¶24-25, 28, 54) that Plaintiffs relied upon in their opening Class motion.

In their Opposition filed on June 18, 2018, Defendants did not challenge market efficiency, which they previously stated was one of two "main issues" for class certification. Rather, relying on the Zurek Report, Defendants argued Plaintiffs did not establish: (1) numerosity because they

did not prove how many potential class members were actually damaged; and (2) their proposed out-of-pocket ("OOP") damages methodology could disaggregate confounding information (a loss causation question). *See generally*, Opposition. Dkt. No. 204-1. In essence, Defendants fault Plaintiffs for not taking the very merits discovery they previously claimed was unnecessary. Plaintiffs filed their Reply on July 18, 2019 relying, in part, on the Hartzmark Rebuttal Report, which refuted Defendants' Opposition arguments and the arguments made in the Zurek Report and elaborated upon the topics in the Hartzmark Opening Report.

Despite full briefing on class certification issues, Defendants still have more to say. Unable to meet the standard for a surreply, Defendants relabel their filing as a motion to strike, in violation of this Court's local rules and binding legal authority. As discussed below, Defendants' Surreply should be rejected as a procedurally improper and meritless surreply. Alternatively, the Court should deny Defendants' requested relief as the Hartzmark Rebuttal Report was timely filed and properly contradicted Defendants' Opposition and supporting evidence.

## III.    ARGUMENT

### A.    Defendants' Thinly-Disguised Surreply Is Procedurally Improper and Should Be Rejected on This Basis Alone

This Court's Practices and Procedures provide for reply briefs only on certain motions. Practices and Procedures of Judge Cathy Bissoon, II.C. All other replies in further support can only be filed with ***leave of Court***. *Id*. "Requests for surreply briefs are ***strongly discouraged***." *Id.*

A surreply is appropriate only in rare circumstances where the moving party raises "new issues or legal bases which are asserted for the first time in a reply brief and which [the non-moving party] would not have had a prior opportunity to address." *Geib*, 2007 U.S. Dist. LEXIS 65010, at *26 n.3 (denying motion to file surreply where movant did "not articulate any argument made [] that fell outside the scope of either the motion or [the] opposition thereto."); *see also Mattern v.*

*City of Sea Isle*, 131 F. Supp. 3d 305, 312 (D.N.J. 2015) (refusing to consider surreply to a reply that "did not raise any new issues"). This is because the purpose of a surreply is to avoid "similar arguments repetitive of prior arguments in the answering brief, or [which] could have been raised in the answering brief." *Kabbaj v. Simpson*, 2013 U.S. Dist. LEXIS 55582, at *23-24 (D. Del. Mar. 7, 2013); *see also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999) ("The general rule against sur[]replies . . . assists the court . . . ***in minimizing the battles over which side should have the last word***."); *Santich v. VCG Hldg. Corp.*, 2017 U.S. Dist. LEXIS 127024, at *6-7 (D. Colo. Aug. 10, 2017) (denying surreply that "merely responds to matters placed in issue by the opposition brief" because it "would create endless briefing where each party would get another opportunity to respond to the opposing party's recently submitted evidence."). Thus, a non-moving party may not submit a surreply simply to present further discussion on issues already argued, as Defendants do here. *See Houser v. Donahoe*, Civil Action No. 12-1024, Dkt. No. 24 (W.D. Pa. June 30, 2013) ("Although labeled as a motion, [the] filing appears to reflect his desire to present further argument in opposition to Defendant's Motion…. [Which] properly construed, constitutes a surreply"). (Bissoon, C.).

Realizing Plaintiffs' Reply ***did not*** raise any new issues so that any request to file a surreply would be met with swift rejection by the Court, Defendants resort to relabeling their Surreply as a motion to strike in hopes of getting the last word. Even a cursory review of Defendants' Surreply reveals their true intent. Of the eight pages of substantive briefing approximately six are spent improperly responding to Plaintiffs' Reply and retreading arguments made in their Opposition. *See, e.g.,* Surreply at 1 (Plaintiffs' Reply arguments "aren't even convincing or particularly helpful"); *id.* at 7 ("As discussed in defendants' opposition. . . ."); *id.* (Dr. Hartzmark's rebuttal report "gives no hint as to whether those investors suffered any injury").

7

As Defendants failed to request leave to file a surreply, their motion should be summarily denied. *See, e.g., Best Med. Int'l, Inc. v. Accuray, Inc.*, 2010 U.S. Dist. LEXIS 128367, at *3 (W.D. Pa. Dec. 2, 2010) (denying request to file surreply where counsel disregarded local rules "in an attempt to obtain unfair advantage"); *Carroll v. Del. River Port Auth.*, 2014 U.S. Dist. LEXIS 104004, at *1 n.2 (D.N.J. July 29, 2014) (disregarding surreply because the "[d]efendant failed to ask for, much less receive, permission to file a sur[]reply prior to filing the sur[]reply.").

### B.  The Opinions in Dr. Hartzmark's Rebuttal Report Properly Rebut Arguments Made by Dr. Zurek and Defendants and/or Elaborate on Topics in Dr. Hartzmark's Opening Report

A party who intends to offer expert testimony is required to disclose a written report for each expert witness, which includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A party may submit expert rebuttal testimony if the evidence is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 550 (D.N.J. 2004).

An expert's rebuttal report should not be stricken if it contains merely "an elaboration of and [is] consistent with an opinion/issue previously addressed" in the expert's initial report. *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 284-85 (W.D. Pa. 2009). The Third Circuit has stated that there is no "bright line rule" whereby every expert opinion "must be preliminarily stated in the report, or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H. Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (finding no error in lower court's admission of expert rebuttal testimony exceeding scope of expert's original report). While the applicable caselaw prohibits an expert from using rebuttal as a "do-over" of an opening report, courts have refrained from "automatically exclud[ing] anything an expert could have included in his or her original report." *Crowley*, 322, F.

Supp. 2d at 551; *see also Riechhold, Inc. v. U.S. Metals Ref. Co.,* 2007 U.S. Dist. LEXIS 34284, at *13 (D.N.J. May 10, 2007).

Here, the Hartzmark Rebuttal Report is timely and properly rebuts arguments made by Defendants in their Opposition and/or the Zurek Report by providing contradicting evidence or elaborating on topics contained in the Hartzmark Opening Report. Accordingly, Defendants have failed to demonstrate any "new" evidence.

1. **Dr. Hartzmark's Rebuttal Opinions Relating to His Damages Methodology Properly Refute Dr. Zurek's Arguments or Elaborate on Topics Contained in His Opening Report**

Defendants ask the Court to strike the Hartzmark Rebuttal Report relating to his damages methodology on two meritless grounds.

*First*, Defendants seek to strike the Hartzmark Rebuttal Report because it purportedly "fill[s] . . . gaps" in his damages methodology relating to the techniques that could be used to disaggregate confounding information with purported "new" information. Surreply at 3-6. In the Hartzmark Opening Report, he fully described his OOP damages methodology including that he could disaggregate confounding information unrelated to the alleged fraud using a "variety of commonly-utilized methods" Hartzmark Opening Report ¶¶119-25. Thus, there were no "gaps" in Dr. Hartzmark's OOP damages methodology to fill.

In support of this contention, Defendants disingenuously assert "nine pages" of the Hartzmark Rebuttal Report cite purportedly "new" information he "entirely neglected to address" in the Hartzmark Opening Report where he, allegedly, spent just two paragraphs addressing damages. Surreply at 4. In reality, the damages discussion in the Hartzmark Opening Report spanned eight paragraphs where the Hartzmark Rebuttal Report spends twelve paragraphs directly rebutting Dr. Zurek's arguments regarding Dr. Hartzmark's OOP damages methodology.

9

Of those twelve paragraphs on rebuttal, Defendants cite only **one** paragraph, ¶16, that supposedly contains new information. *Id.* at 4-5. But ¶16 simply lists five examples of common techniques economic experts use to disaggregate confounding information, including the intra-day pricing technique Dr. Zurek identified at his deposition.[6] *See* Hartzmark Rebuttal Report ¶16 ("there are a multitude of techniques that could be used to estimate the portion of the price reaction due to the revelation of the truth. These include [listing examples]."). Thus, ¶16 merely elaborates on the "variety of methods" Dr. Hartzmark identified in his Opening Report that are available and commonly used by experts (including Defendants') to disaggregate confounding information. Hartzmark Opening Report at ¶119. It is well-settled (and Defendants do not dispute) that an expert is permitted on rebuttal to elaborate on topics contained in the opening report. *See, e.g.*, *Pritchard*, 263 F.R.D. at 284-85 (finding declaration did not include any new opinions, but rather served to further elaborate upon the initial opinions expressed in the report and rebut the defense experts' opinions); *Emcore Corp. v. Optium Corp.*, 2008 U.S. Dist. LEXIS 59794, at *11, 15 (W.D. Pa. Aug. 5, 2008) (refusing to strike expert report because the opinions, while "not exactly what he stated in his report," were merely "an elaboration" of topics discussed in prior report) (citing *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2006) ("Section 26(a)(2)(B) does not limit an expert's testimony simply to reading his report…. The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report.")).[7] The remaining paragraphs Defendants claim are "new" (¶¶7-15, 17-18) rebut

---

[6] *See* Declaration of Shannon L. Hopkins in Support of Plaintiffs' Response in Opposition to Defendants' Motion to Strike ("Hopkins Decl.") at Ex. A Deposition of Paul Zurek, Ph.D. ("Zurek Dep.") at 120:7-121:14. Defendants mischaracterize the Hartzmark Rebuttal Report. For example, he spoke about the intra-pricing technique in the context of an example Dr. Zurek provided as one of the commonly used techniques to disaggregate confounding information.
[7] *See also Haskins v. First Am. Title Ins. Co.*, 2013 U.S. Dist. LEXIS 138041, at *7 (D.N.J. Sep. 26, 2013) (rebuttal not "stricken if it contains merely an elaboration of and [is] consistent with an opinion previously addressed in the expert's initial report"); *Dow Chem. Co. v. Nova Chems. Corp.*, 2010 U.S. Dist. LEXIS 50101, at *6 (D. Del. May 20, 2010) (expert materials "only elaborate and therefore, should not be excluded"); *Lucent Techs. Inc. v. Gateway,*

10

arguments made in the Zurek Report and are consistent with the opinions contained in the Hartzmark Opening Report. Defendants do not claim otherwise.

Defendants criticize Dr. Hartzmark for including these disaggregation technique examples they claim were missing yet complain he still has to confirm which technique(s) he will actually use. Surreply at 6. But as Dr. Hartzmark explained, the determination of which technique should be used as an input into his OOP methodology to disaggregate confounding information is a loss causation issue that will be applied the same for all class members and can only be ascertained after merits discovery is completed.[8] Hartzmark Rebuttal Report, ¶16 ("any analysis of potential confounding information would be dependent on the claims being tried after discovery is complete"); *id.* at ¶17 ("it is not possible to address those [loss causation] issues at this time because there has not been discovery"); *see also* Hopkins Decl. at Ex. B, Deposition of Michael L. Hartzmark, Ph.D. ("Hartzmark Dep.") at 93:13-99:22. Dr. Zurek agrees:

> [E]stablishing the feasibility of calculating inflation-based damages requires an analysis to determine: first, ***which information would have been available to the market absent the alleged misrepresentations*** . . . ***The first step requires consideration of what is alleged to have been misrepresented*** and how those misrepresentations affected the information available to the market. . . .

Zurek Report ¶31. Yet Defendants represented in the Rule 26(f) Report that "***none***" of the class certification issues "depend[] on whether the challenged statements were true or false." Dkt. 160 at 6. Defendants cannot have it both ways.[9]

---

*Inc.*, 2007 U.S. Dist. LEXIS 36246, *15 (S.D. Cal. May 16, 2007) (declaration permitted where more detailed than report because it did not offer new opinions on the issues, but rather just elaborated on them).

[8] As set forth in Plaintiffs' Reply, courts in the Third Circuit and everywhere else do not require Plaintiffs to identify the particular technique that will be used on class certification prior to merits discovery. *See Li v. Aeterna Zentaris*, 2018 U.S. Dist. LEXIS 37811 at *7 (D.N.J. February 28, 2018) (at class certification "[p]laintiffs are not required to produce a detailed damages model" and denying defendants' motion to strike until "***after discovery has ended and an amended report is submitted***"). This is because, regardless of the technique used, it will apply <u>uniformly</u> to all class members. *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 99 (S.D.N.Y. 2018) (exact methodology to disaggregate not necessary for class certification because "[t]he ***answer for the class will be the same***.").

[9] Defendants' reliance on *Byrd v. Aaron's, Inc.*, 2017 U.S. Dist. LEXIS 41030, at *13-16 (W.D. Pa. Mar. 22, 2017) is misplaced. In *Byrd*, the court granted defendants' motion to strike as untimely and raising new theories on reply, but

*Second*, while not entirely clear, it appears Defendants are requesting that the Court strike paragraphs 24 through 30 of the Hartzmark Rebuttal Report responding to Dr. Zurek's *Comcast* argument because it purportedly "reads . . . more like the legal arguments of counsel." Surreply at 5. Not so. The Hartzmark Rebuttal Report provides opinions solely as an economist and only analyzes the *economic* differences between the individual characteristics of the classes and alleged harm in *Comcast* as compared to *U.S. Steel*. *See, e.g.*, Hartzmark Rebuttal Report at ¶25 (discussing differences in the numerous alleged economic harms suffered by potential *Comcast* class members as compared to the single harm suffered by *U.S. Steel* Class members). Thus, there is no basis to strike the Hartzmark Rebuttal Report as it does not make legal conclusions.

If anything, it is Dr. Zurek's, not Dr. Hartzmark's report, that reads like a legal brief. Dr. Zurek quotes the *Comcast* opinion as stating, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiffs' liability] theory." ¶27. He then spends the remainder of his rebuttal "analyz[ing] whether Dr. Hartzmark has demonstrated the existence of such a methodology" that complies with Dr. Zurek's interpretation of *Comcast*. *Id.* The Zurek Report makes no attempt to provide any economic analysis of *Comcast* as compared to this Action. Instead, it draws legal conclusions throughout. *See e.g.*, Zurek Report at ¶28 ("Dr. Hartzmark has not . . . demonstrated that a methodology exists that would calculate damages solely attributable to Plaintiffs' remaining theory of liability"); *id.* at 13 ("Dr. Hartzmark Has Not Demonstrated the Existence of a Methodology to Calculate Damages Consistent with Plaintiffs' Remaining Theory of Liability"); *id.* at ¶40 ("I understand that, consistent with the

---

only after plaintiffs were allowed to renew their previously-denied class certification motion and conduct an additional eighteen months of discovery and were fully aware of defendants' predominance challenges. *Id.* Yet plaintiffs' renewed class motion still relied on the original expert report and it was not until defendants' second opposition containing nearly identical challenges to their first, that plaintiffs submitted a rebuttal report addressing defendants' arguments. *Id.*

Court's MTD Order and the Supreme Court's decision in *Comcast*, inflation used **as an input** to calculate damages should be attributable solely to Defendants' alleged affirmative misrepresentations concerning past proactive maintenance . . .").[10]

It is ironic that Defendants accuse Plaintiffs of using the Hartzmark Rebuttal Report to effectively extend the 10-page limit for their Reply set in the Court's CMO. This is false and not supported by the facts. Plaintiffs included their arguments and analysis in the Reply brief itself. They did not simply cite the Hartzmark Rebuttal Report. Moreover, a clear reading of the Hartzmark Rebuttal Report demonstrates its sole purpose is to properly rebut the Zurek Report.

> **2.    Dr. Hartzmark's Rebuttal Opinion on Numerosity Rebuts Arguments in Defendants' Opposition Using Evidence from his Opening Expert Report Relied on by Plaintiffs in their Opening Class Brief**

As set forth in Plaintiffs' briefing on class certification, common sense dictates that numerosity is satisfied here where over 170 million shares of U.S. Steel stock were outstanding and trading on the NYSE during the Class period. *See* Dkt. No. 183 at 2 (opening class certification brief). Indeed, in securities cases like this involving publicly-traded companies with millions of shares trading on a national exchange every day, defendants typically do not challenge numerosity or the parties stipulate to numerosity. Plaintiffs are not aware of a single securities class action decision that has denied class certification on numerosity grounds. This is presumably why Defendants deleted "the number of potential class members" from the Rule 26(f) Report.

Contrary to Defendants' contention (Surreply at 6-8), Plaintiffs do not assert new evidence of numerosity on Reply through Dr. Hartzmark's Rebuttal Report. Rather, the Hartzmark Rebuttal

---

[10] *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 253-54 (W.D. Pa. 2012) upon which Defendants rely is distinguishable. There, the insurance expert was not permitted to testify about whether employees "acted in bad faith" or "on contract construction" as impermissible legal conclusions. Here, unlike *Smith*, Dr. Hartzmark is only opining on the economic differences in the make-up of the *Comcast* class as compared to the Class in this Action, such as the different economic harms based upon different economic factors, such as geographic location, promotions offered and other individual consumer characteristics not present in this case.

Report relies upon evidence included in Hartzmark's *Opening* Report demonstrating numerosity upon which Plaintiffs relied in their opening brief, including: (i) U.S. Steel had 146.3 million and 174.7 million shares outstanding as of January 27, 2016 and April 25, 2017, respectively, with an average of 17.3 million shares trading daily (Hartzmark Opening Report ¶¶24, 25, 28); (ii) there was a total volume of 779,858 call option contracts (representing 77,985,800 underlying shares) and 724,805 put option contracts (representing 72,480,500 underlying shares) for options that expired after April 25, 2017 (*id.* at ¶100); and (iii) over 100 million shares of U.S. Steel stock traded on April 26, 2017 after the truth was revealed (*id.* at App. E).

Moreover, the Hartzmark Rebuttal Report properly rebuts arguments made in Defendants' Opposition. *See, e.g., Smithkline Beecham PLC v. Teva Pharm. United States, Inc.*, 2007 U.S. Dist. LEXIS 45703, at *10 (D.N.J. June 22, 2007) (rejecting motion to strike where a calculation could have been considered "new information", but the "argument is not new and the new calculation does not directly contradict [the expert's] previous statements."). Indeed, the very purpose of reply briefs is to analyze responsive briefs and submit argument and evidence ***in further support*** of the underlying motion. *See, e.g., Tyson v. Or. Anesthesiology Grp.*, 2008 U.S. Dist. LEXIS 44992, at *43 (D. Or. June 6, 2008) (finding affidavit and declaration submitted with reply do not constitute "new evidence" because they "rebut arguments asserted by plaintiff—including assertions first raised by plaintiff in his opposition"); *Cook v. Champion Shipping AS*, 732 F. Supp. 2d 1029, 1031 n.2 (E.D. Cal. 2010) (denying motion to strike declarations submitted with reply where "the declarations respond to discrete issues raised by plaintiffs in their opposition brief, and do not raise new facts or arguments.").

Finally, Defendants have now ***twice*** made the erroneous argument that "after the class period" U.S. Steel's stock price purportedly rebounded and thus, investors did not suffer harm. *See*

14

Opposition at 22; Surreply at 7-8 ("given… the quick rebound in its stock price after the class period, it is not at all clear whether any of the investors Dr. Hartzmark alludes to were harmed at all."). This is an improper foray into loss causation. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ("*Halliburton I*"). Furthermore, Defendants are wrong. Most glaringly, Defendants demonstrate a lack of understanding of the Private Securities Litigation Reform Act's ("PSLRA") provision on damages. The PSLRA's "bounce back" provision capping damages ends ***90 days following the final corrective disclosure***—here July 24, 2017 when U.S. Steel's stock ***closed at $23.80 per share*** and the 90-day average price was $21.51 per share (Hartzmark Rebuttal Report at n. 61), well below the closing price during much of the Class Period, including July 26, 2016 through August 11, 2016 and November 9, 2016 through April 25, 2017. *See* Dkt. No. 112-8, 1-8; 15 U.S.C. §78u-4(e)(1); *see also Acticon AG v. China N. E. Petroleum Hlds, Ltd*., 692 F.3d 34, 39 (2d Cir. 2012) ("if the mean trading price during the 90-day period is less than the plaintiff's purchase price, then the plaintiff may recover out-of-pocket damages up to the difference between her purchase price and the mean trading price."). Thus, that U.S. Steel's stock price may have increased at some point after the 90-day lookback is irrelevant to damages here.

### C. The "*Pennypack* Factors" Do Not Prescribe Striking the Rebuttal Report

As demonstrated *infra* (Part III.B, 1-2), the Hartzmark Rebuttal Report was timely and contains only proper rebuttal evidence under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). Therefore, Defendants' request to strike under Federal Rule of Civil Procedure 37(c)(1) is without merit. Even if the Court considers Defendants' request, any purported "failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing a motion to strike under Rule 37(c)(1), courts consider the *Pennypack* Factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified or the excluded evidence would have been offered;

(2) the ability of that party to cure the prejudice; (3) the extent to which allowing such witnesses or evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).

The "exclusion of critical evidence is an ***extreme sanction***" and should "not normally [] be imposed absent a showing of ***willful deception or flagrant disregard*** of a court order by the proponent of the evidence." *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994); *accord ZF Meritor*, 696 F.3d at 297. In fact, the "Third Circuit has, on several occasions, manifested a ***distinct aversion*** to the exclusion of important testimony absent ***evidence of extreme neglect or bad faith*** on the part of the proponent of the testimony." *Taylor v. Amcor Flexibles, Inc.*, 2011 U.S. Dist. LEXIS 70671, at *8 (D.N.J. June 29, 2011); *ZF Meritor*, 696 F.3d at 298 (abuse of discretion in denying plaintiffs' request to submit amended report where defendant "would not have suffered substantial prejudice" and the amendment "will not disrupt the orderly and efficient flow of the case"); *Paoli*, 35 F.3d at 792 (exclusion is inappropriate "where… there was only a slight deviation from pre-trial notice requirements, and admitting the witness was likely to cause only slight prejudice"). Accordingly, "[c]ourts in the Third Circuit should exercise particular restraint in considering motions to exclude evidence." *ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co.*, 167 F.R.D. 668, 671-72 (D.N.J. 1996). The *Pennypack* Factors show the Hartzmark Rebuttal Report was substantially justified and should not be excluded.

### 1. Defendants Were Neither Surprised Nor Prejudiced by Dr. Hartzmark's Rebuttal Report

Defendants claim that there "can be no doubt" that the Hartzmark Rebuttal Report comes as a "significant surprise." Surreply at 8. Nonsense. ***First***, Plaintiffs filed their Motion demonstrating that this Action checks all the boxes necessary for class-wide treatment on April

16

19, 2019. Dkt. No. 183 at 27-8. The motion papers establish both that "[t]he Class is Sufficiently Numerous" (Dkt. No. 183 at 8) and that common questions of law or fact predominate over individualized ones because, *inter alia*, "Damages Can Be Determined on a Class[-]Wide Basis." Dkt. No. 183 at 27-8. In making both showings, Plaintiffs relied in part on findings and data in the Hartzmark Opening Report. Defendants then opposed class certification, relying on the Zurek Report, claiming (erroneously) that Plaintiffs had not met their burden of proof and attacking the findings of Dr. Hartzmark. *See generally*, Opposition. Defendants cannot feign surprise from the Hartzmark Rebuttal Report that ***directly*** addresses their arguments on Opposition and was contemplated by the CMO. *See* Part III.B.

***Second***, Defendants are not prejudiced because they had the opportunity to, but did not, question Dr. Hartzmark about the techniques he could use to disaggregate confounding information at his deposition. *See Barta v. Sears, Roebuck and Co.*, 307 F. Supp. 2d 773, 783 (E.D. Va. 2004) (denying defendant's motion to strike experts where defendant had an opportunity to fully depose those experts on their opinions and qualifications). Dr. Hartzmark testified that determining which technique he would use is a question of loss causation. *See* Hopkins Decl. at Ex. B Hartzmark Tr. 97:13-98:7 (Q: Have you tried to determine the amount of inflation on U.S. Steel stock on the day before the end of the class period? . . . A: . . . As to the techniques that might be used to then input that into the artificial inflation and apply the common damages methodology, that's a question of loss causation."); *id.* at 150:18-152:20 ("no matter what that input is . . . the finder of fact will determine the level of that input and the artificial inflation ribbon and my damages methodology, which is formulaic, will be applied class-wide").

Dr. Hartzmark's deposition testimony is entirely consistent with his Opening and Rebuttal Reports. *See* Opening Report ¶119 ("There are a variety of commonly-utilized methods to estimate

the true price on each date of the Class Period"); Rebuttal Report ¶16 ("there are a multitude of

techniques that could be used to estimate the portion of the price reaction due to the revelation of

the truth. These include [listing examples]." *See also Dzielak*, 2017 U.S. Dist. LEXIS 39232 at

*91 (neither surprise nor prejudice found where rebuttal report "presents no new opinions" and

merely "confirms and elaborates on the initial report.").

  ***Third***, Defendants' failed to ask Dr. Hartzmark a single question about numerosity at his

deposition, despite that Plaintiffs relied on the Hartzmark Opening Report in satisfying their

numerosity burden in their opening class certification motion. *See* Dkt. 183 at 8-9 (citing

Hartzmark Opening Report ¶¶24-25, 28, 54, 100). Defendants' claim of surprise and "prejudice"

rings hollow given Defendants' advanced notice that the Hartzmark Opening Report contained

significant data on numerosity-related issues (which Plaintiffs relied upon in their opening brief),

that Defendants had the opportunity to depose Dr. Hartzmark, ***and*** that Plaintiffs were obviously

going to respond to Defendants' unexcepted numerosity challenges. Finally, as Defendants did not

suffer any prejudice, there is nothing here to "cure."

    **2.  There is No Risk of Disrupting Trial**

  Defendants do not, and cannot, argue that the Hartzmark Rebuttal Report will affect trial

because the Court has not yet set a trial date. *See Ciocca v. BJ's Wholesale Club, Inc.*, 2011 U.S.

Dist. LEXIS 90067, at *14 (E.D. Pa. Aug. 12, 2011) ("In cases where the court excludes expert

testimony on grounds of untimeliness, it is almost always in the face of a fast approaching trial

date."). Instead, Defendants argue that the filing of the Hartzmark Rebuttal Report disrupts the

Court's class certification proceedings. This boot-strapping argument is particularly unpersuasive

here, where the Hartzmark Rebuttal Report did not introduce any "new" evidence.[11] Thus, this factor weighs heavily against striking the Hartzmark Rebuttal Report.

### 3.    Plaintiffs Did Not Act in Bad Faith

Defendants do not argue Plaintiffs were not entitled to file a rebuttal report in support of their Reply. They do, however, contend Plaintiffs engaged in bad faith by purportedly adding "new" opinions in the Hartzmark Rebuttal Report and by Plaintiffs' counsel's prior conduct. *See* Surreply at 9-10 (referencing earlier, unrelated motions). It goes without saying that Plaintiffs' vigorous advocacy to date, including attempting to add an institutional investor as a class representative and moving for reconsideration of a Court's order, is ***not*** bad faith. Unlike Defendants' Surreply, which was filed without leave of Court, Plaintiffs properly sought the Court's permission to amend and to add Oklahoma Firefighters as a party to this Action. Moreover, Defendants themselves sought review of the Court's dismissal order when they unsuccessfully moved for interlocutory appeal. Dkt. No. 138.

Bad faith is found where, unlike here, a party "violate[s] a scheduling order willfully" or "where the violation at issue was one in a line of violations by the non-moving party". *Withrow v. Spears*, 967 F. Supp. 2d 982, at *1006 (D. Del. 2013) (citing *In re TMI Litig.*, 193 F.3d 613, 721-22 (3d Cir. 1999) (bad faith found where defendants engaged in a "pattern of filings that constituted a flagrant violation" of the court's order and did not seek leave of court before filing untimely expert reports)). Moreover, other courts in this circuit typically "reserve such a finding for only extreme circumstances." *Id.*; *see e.g.*, *Maynard v. Sugarloaf Twp.*, 2011 U.S. Dist. LEXIS 54679,

---

[11] Defendants do not cite any authority for the proposition that delaying a decision on class certification is equivalent to delaying an imminently-approaching trial date. Courts in this Circuit do not implicate this factor unless the improper expert report threatens the orderly conduct of trial. *See Dzielak*, 2017 U.S. Dist. LEXIS 39232 at *91 ("at this ***very early, pre-class-certification stage***, consideration of Dr. Scott's additional reports do not threaten to disrupt the orderly and efficient trial of this case.").

at *12 (M.D. Pa. May 23, 2011) (bad faith or willful failure to comply found where "three and a half years" had elapsed since the deadline for expert reports).

Plaintiffs have exhibited no bad faith in timely submitting the Hartzmark Rebuttal Report which directly rebutted the arguments made by Defendants.

### 4.   Dr. Hartzmark's Rebuttal Report is Important

Plaintiffs submit that the Hartzmark Rebuttal Report is important to the Court's analysis of their Motion. In weighing this factor, as a matter of policy, "courts favor the resolution of disputes on their merits." *Withrow*, 967 F. Supp. 2d at 1007. The issues Defendants raise are critical to the Court's class certification determination. In securities class actions, where the individual recovery of absentee class members is likely to be too small to pursue separately, class-wide treatment is the only practical way to provide adequate redress. *See Kline v. First W. Gov't Sec.*, 1996 U.S. Dist. LEXIS 4019, at *36 (E.D. Pa. Mar. 14, 1996) (class action superior in securities litigation because it "affords small investors an opportunity to redress their injuries."). To the extent the Court considers Defendants' argument meritorious, Plaintiffs submit that the Hartzmark Rebuttal Report effectively and succinctly rebuts them and is thus important. *See ZF Meritor*, 696 F.3d at 299 (exclusion was inappropriate given "the critical nature of the evidence"); *Pennypack,* 559 F.2d at 905 (noting that "the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence").

## IV.   CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Surreply and consider the Hartzmark Rebuttal Report when analyzing Plaintiffs' Motion for Class Certification.

Dated: August 5, 2019                    Respectfully submitted,

LEVI & KORSINSKY, LLP                */s/ Vincent Coppola*

20

Shannon L. Hopkins                              Vincent Coppola, Esquire
Nancy A. Kulesa                                 Penn. Attorney # 50181
Stephanie A. Bartone                            513 Court Place
Gregory M. Potrepka                             Pittsburgh, PA 15219
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel.: (203) 992-4523                            *Liaison Counsel for Plaintiffs*
Fax: (212) 363-7171
shopkins@zlk.com
nkulesa@zlk.com
sbartone@zlk.com
gpotrepka@zlk.com

*Lead Counsel for Plaintiffs*