**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTAKIS VRAKAS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 17-579 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| UNITED STATES STEEL | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court are two motions: Plaintiffs' Motion for Class Certification ("Pl. Class Cert. Mt.," Doc. 182) and Defendants' Motion to Strike the Expert Rebuttal Report of Michael L. Hartzmark, Ph.D ("Def. MTS," Doc. 207).   For reasons that follow, the Court will grant the Motion for Class Certification and grant in part and deny in part the Motion to Strike.

### I.   Memorandum

Given the complicated history and nature of this case, the Court will address only the background relevant to the current posture of the case.

On August 16, 2017, this Court issued an order consolidating this case, as well as any other subsequently-filed related actions, appointing Mr. Christakis Vrakas to serve as Lead Plaintiff in the consolidated action and approving Mr. Vrakas's choice of counsel.  Order, Doc. 47.  In October 2017, Mr. Vrakas, along with Plaintiffs Leann Reed and Robert Myer, filed an Amended Complaint against United States Steel Corporation ("U.S. Steel" or the "Company"), individuals Mario Longhi, David Burritt and Dan Lesnak, and many entities that served as underwriters for U.S. Steel's secondary public offering on August 15, 2016.

On September 29, 2018, the Court dismissed all but one of Plaintiffs' claims against all Defendants. Since then, Mr. Myer has withdrawn from the Action (Doc. 173), and Ms. Reed voluntarily dismissed her claims, with prejudice, against the underwriter defendants. Doc. 176. In January 2019, the parties filed their Rule 26(f) Joint Report of the Parties Pursuant to Appendix LCvR 23.E (Class Action) ("Rule 26(f) Report," Doc. 160) and the Court issued its Case Management Order ("CMO," Doc. 165) shortly thereafter.

In April 2019, Plaintiffs Mr. Vrakas and Ms. Reed ("Plaintiffs") filed a Motion for Class Certification, accompanied by a Memorandum in Support of Motion for Class Certification ("Pl. Class Cert. Mem.," Doc. 183) and Declaration ("Pl. Class Cert. Dec.," Doc. 184) in support of their Motion. Plaintiffs moved, pursuant to Fed. R. Civ. Pro. 23(a), (b)(3) and (g), to: (1) certify this action as a class action;[1] (2) appoint Plaintiffs as Class representatives; (3) appoint Levi & Korsinsky, LLP as Class counsel, and (4) grant any other relief the Court deems just and proper. Pl. Class Cert. Mt. at ¶1. Plaintiffs posit that the Court should certify the proposed Class because they contend that it meets the following requirements of Fed. R. Civ. P. 23(a) and 23(b)(3):

- Numerosity – During the Class Period, U.S. Steel had 146.3 million and 174.7 million shares outstanding as of January 27, 2016 and April 24, 2017, respectively, with an average of 17.3 million shares trading daily. According to Plaintiffs, this supports their contention that the class is sufficiently numerous.

[1] The proposed class ("Class") that Plaintiffs seek to certify consists of:

All persons or entities who purchased or otherwise acquired United States Steel Corporation common stock and options during the period from January 27, 2016 through April 25, 2017, inclusive (the "Class Period"), and were injured thereby. Excluded from the Class are: (1) defendants; (2) the individual defendants' immediate family members; (3) any person who was an officer or director of the Company during the Class Period; (4) any firm, trust, corporation, or other entity in which a defendant has or had a controlling interest; and (5) the legal representatives, affiliates, heirs, successors in-interest, or assigns of any such excluded person or entity.

- <u>Commonality and typicality</u> – Both are met where each proposed class member asserts the same claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15. U.S.C. §§ 78j(b) and 78t(a), based on the same alleged misconduct against the same Defendants and seeks damages for the same type of harm.

- <u>Adequacy</u> – Plaintiffs have retained Levi & Korsinsky, highly qualified counsel with substantial experience successfully prosecuting securities class actions such as this, who have zealously represented the interests of the Class. Plaintiffs also have no known conflicts with the class.

- <u>Predominance and Superiority of a Class Action</u> – Individualized issues concerning reliance will not predominate because (i) Plaintiffs' expert has opined that the market for U.S. Steel common stock and options was efficient during the Class Period and thus the "fraud on the market" presumption of reliance, established by the Supreme Court in <u>Basic Inc. v. Levinson</u>, 485 U.S. 224 (1988) applies; and (ii) the other elements of a securities fraud claim involve class wide proof and are highly suitable to litigation on a class basis. Class action is the superior method for dealing with securities class actions involving hundreds or thousands of potential class members.

Defendants filed an Opposition to Plaintiffs' Motion for Class Certification ("Def. Class Cert. Opp.," Doc. 203) along with a Declaration ("Def. Class Cert. Dec.," Doc. 204) in support of their Opposition.[2] Specifically, Defendants argue that Plaintiffs have failed to meet the following requirements:

- <u>Predominance</u> – Plaintiffs have not proven that common questions predominate because they have not supplied a damages model that fits their liability theory and failed to provide a workable methodology to address damages on a class-wide basis.

- <u>Numerosity</u> – Plaintiffs have not provided sufficient proof that the proposed class would be so numerous that joinder of all parties would be impracticable.

- <u>Adequacy</u> – Plaintiffs have not shown that Ms. Reed will adequately represent the proposed class because of her lack of involvement in the strategy and dismissal of

---

[2] Plaintiffs later filed a Reply in Further Support of Motion for Class Certification ("Pl. Class Cert. Reply," Doc. 205) accompanied by a Declaration in Support of Plaintiffs' Reply in Further Support of Motion for Class Certification ("Pl. Class Cert. Reply Dec.," Doc. 206). Finally, Plaintiffs filed a Notice of Supplemental Authority in Support of Their Motion for Class Certification ("Pl. Notice of Supp. Auth.," Doc. 213), to which Defendants responded ("Def. Response to Supp. Auth.," Doc. 214).

the Securities Act claims, because she did not expect to be involved in or attend the mediation and because she would rely on legal counsel with respect to resolving the case.

Defendants also filed a Motion to Strike the Expert Rebuttal Report of Michael L. Hartzmark, Ph.D accompanied by a Memorandum of Law in support ("Def. MTS Mem.," Doc. 208). Plaintiffs filed a Response in Opposition to Motion to Strike the Hartzmark Rebuttal Report ("Pl. MTS Opp.," Doc. 209) along with a Declaration in support ("Pl. MTS Dec.," Doc. 210). Defendants' Motion for Leave to File Reply in Support of Defendants' Motion to Strike was denied. Doc. 212. The Court will first address the Motion for Class Certification before proceeding to the Motion to Strike.

### A. Motion for Class Certification

To obtain class certification under Rule 23(b), Plaintiffs must "satisfy Rule 23(a)'s … prerequisites of numerosity, commonality, typicality, and adequacy of representation … and must also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Amgen Inc., v. Conn. Ret. Plans and Trust Funds, 568 U.S. 455, 460 (2013).

The Court must engage in a "rigorous analysis" and find that "each Rule 23 requirement is met." Ferreras v. Am. Airlines, Inc., 2019 WL 7161214, at *3 (3d Cir. Dec. 24, 2019) (internal quotations and citations omitted). To do so, the Court "must resolve every dispute that is relevant to class certification." Id. Plaintiffs' "[f]actual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008), as amended (Jan. 16, 2009). Defendants oppose class certification on the following grounds: (1) failure to prove numerosity; (2) failure to prove that

Ms. Reed is an adequate class representative; and (3) failure to prove predominance of common questions. Def. Class Cert. Opp.

        1. <u>Rule 23(a) Requirements</u>

        *a. Numerosity*

Plaintiffs argue that while no minimum number of plaintiffs is required to determine whether a class is sufficiently numerous as to justify proceeding as a class action, there "is a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." Pl. Class Cert. Mem. at 8, citing <u>In re CIGNA Corp. Sec. Litig.</u>, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006). <u>See also</u> <u>City of Sterling Heights Gen. Employees' Ret. System v. Prudential Fin. Inc.</u>, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015) (holding that the "[numerosity] requirement is readily met in securities cases involving an issuer whose stock trades publicly on the NYSE," where the stock in question "trades on the NYSE with significant daily volume"). According to Plaintiffs, U.S. Steel had approximately 146.3 million and 174.7 million shares outstanding as of January 27, 2016 and April 25, 2017, respectively, with an average of 17.3 million shares trading daily on the New York Stock Exchange. Pl. Class Cert. Mem. at 8.

Defendants focus on Plaintiffs' citations of several older cases stating that courts "may accept common sense assumptions in order to support a finding numerosity,"[3] criticizing this "common sense" approach as no longer being good law. Def. Class Cert. Opp. at 20. Defendants further argue that subsequent Supreme Court and Third Circuit cases also abrogate the presumption that in securities class actions, plaintiffs can show numerosity by showing

---

[3] <u>In re Cephalon Sec. Litig.</u>, 1998 WL 470160, at *2 (E.D. Pa. Aug. 12, 1998)

significant daily trading volume on a nationally traded exchange.[4] The Court disagrees. Defendants cite no securities class action that has taken a different approach after their cited Supreme Court and Third Circuit cases. On the other hand, Plaintiffs have cited Roofer's Pension Fund v. Papa, 2019 WL 6015392 (D.N.J. Nov. 14, 2019) as an example of a peer court that has more recently found numerosity under similar circumstances. Pl. Notice of Supp. Auth. at ¶7.

Defendants argue that Roofer's Pension Fund does not apply because the defendants in that case did not challenge numerosity. Def. Response to Supp. Auth. at ¶5. Defendants further argue that the facts here indicate that stockholders could exist who would have "derived substantial benefit" rather than injury. Def. Class Cert. Opp. at 22. However, the Court does not see how this allegation is any less speculative than Plaintiffs'. Thus, the Court finds that the facts alleged by Plaintiffs about the number of shares and trades are sufficient to meet the numerosity requirement of Rule 23(a)(1).[5]

---

[4] Defendants cite Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011) and Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467 (3d Cir. 2018), but neither cases relate to numerosity specifically in the securities class action context.

[5] The Court recognizes that Plaintiffs' ability to seek additional, detailed discovery on numerosity may also have been limited by the parties' agreements noted in the Rule 26(f) Report. Plaintiffs have alleged that Defendants suggested that no discovery was needed on the "number of potential class members" and that Defendants did not intend to challenge numerosity as evidenced by Defendants striking from the Rule 26(f) Report reference to the number of potential class members under the category "on which discovery prior to class certifications is needed." Pl. MTS Opp. at 2-3. Plaintiffs claim that as a result of Defendants' actions, they did not seek discovery into this topic. Id. at 2-4, 6.

Indeed, the Rule 26(f) Report lacks any discussion of the number of potential class members in its entirety, let alone in the section entitled, "Subjects on which discovery prior to class certification is needed." ¶9. Given Plaintiffs' allegations and the lack of discussion on numerosity in the Rule 26(f) report, coupled with the standard adopted by other courts in this Circuit, the Court is surprised by Defendants' vigorous contentions in this regard.

## b. Commonality

Commonality under Rule 23(a)(2) is satisfied where class representatives share "at least one question of fact or law with the grievances of the prospective class." Reyes v. Netdeposit, LLC, 802 F.3d 469, 486 (3d Cir. 2015). The "court's focus must be on whether the defendant's conduct is common as to all of the class members" and the "bar is not a high one." Id. (internal quotations, alterations and citations omitted). Plaintiffs suggest a number of questions of law and fact in common for all Class members, such as whether (1) Defendants' statements and omissions were materially false or misleading; (2) Defendants made their misrepresentations and omissions with scienter; (3) the price of U.S. Steel securities was artificially inflated (or deflated for the put options on U.S. Steel common stock) during the Class Period; (4) Defendants' misrepresentations and omissions caused economic harm to Class members; and (5) Defendants Longhi, Burritt and Lesnak were control persons. Defendants do not contest that these questions are common to the Class, and the Court finds that the examples cited by Plaintiffs meet the standard for commonality.

## c. Typicality

The Third Circuit generally considers these three factors when determining typicality under Rule 23(a)(3):

1. The claims of the class representatives must be generally the same as those of the class in terms of both (a) the legal theory advanced, and (b) the factual circumstances underlying the theory;

2. The class representative must not be subject to a defense that is both inapplicable to many class members and likely to become a major focus of the litigation; and

3. The interests and incentives of the class representative must be sufficiently aligned with those of the class.

In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009). According to Plaintiffs, all of these factors have been met.  In particular, Mr. Vrakas and Ms. Reed purchased U.S. Steel securities during the Class Period; they suffered damages because of Defendants' alleged Exchange Act Section 10(b) and 20(a) violations; their claims arise from the same legal theories and alleged misrepresentations and omissions as those of all Class members, and they were damaged when the shares of U.S. Steel shares declined after those alleged misrepresentations and omissions were disclosed or became apparent to the market.  Pl. Class Cert. Mem. at 11.  Plaintiffs maintain that they do not have any unique defenses, interests or incentives that differ from those of the proposed Class.  Defendants do not contest Plaintiffs' claims in this context, and the Court finds that the typicality requirement is satisfied.

### d. Adequacy

Plaintiffs represent that they and their counsel meet the adequacy requirement of Rule 23(a)(4).[6]  They provide declarations outlining their respective experiences in investing, their understanding of the litigation and their responsibilities as class representatives, as well as some documents they have reviewed thus far in the litigation.  Pl. Class Cert. Dec. at Ex. 3-4 (Doc. 184-5 and 184-6).  Plaintiffs state that they have suffered the same injury as the proposed Class members, are "willing and able to prosecute this action on behalf of the Class to a successful conclusion" and that no conflicts exist.  Pl. Class Cert. Mem. at 12-13.

Defendants have not challenged the adequacy of Mr. Vrakas.  They contend, however, that Ms. Reed is an inadequate class representative because she allegedly was "not consulted in

---

[6] The Court will not address the merits of the adequacy of proposed Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters"), as Plaintiffs' motion to add Oklahoma Firefighters as a Named Plaintiff was denied after the filing of the Amended Complaint.  Doc. 188.

advance about the dismissal with prejudice of her [Securities Act] claims" and that "she did not expect her opinion to be sought in connection with the mediation, did not plan to attend [or actually attend] the mediation, and did not expect to weigh in on any potential resolution of the case." Def. Class Cert Opp. at 25-26.

Plaintiffs contest this. In their Reply, Plaintiffs state that Ms. Reed is "more than adequately versed about the facts and her responsibilities in this case." Pl. Class Cert. Reply at 10. As shown by Ms. Reed's deposition transcript, she can articulate the claims, identify Defendants and describe her involvement and her responsibilities. Pl. Class Cert. Reply Dec. at Ex. 4, Doc. 206-4. Plaintiffs further contend that Ms. Reed's deposition testimony shows that she learned of the dismissal of the Securities Act claims beforehand, and that she understood why they were dismissed. Id. After reviewing the transcript, as well as Ms. Reed's declaration, the Court cannot agree with Defendants that Ms. Reed lacked knowledge of the dismissal of her Securities Act claims and that she could not serve as an adequate class representative.

First, Defendants claim that "[t]he list of materials Reed says she reviewed in this matter conspicuously omits the stipulation by which her Securities Act claims were dismissed, as well as the order approving the stipulation." Def. Class Cert. Opp. at 25. The Declaration clearly states that she reviewed documents "including" a list of examples—it never represented that the list was exhaustive. Pl. Class. Cert. Dec. at Ex. 4. This omission is not evidence. Second, claiming that Ms. Reed "was merely 'informed' that the Securities Act claims had been dismissed, rather than 'consulted' beforehand" (Def. Class Cert. Opp. at 25) is more wordsmithing than a substantive distinction.[7]

_____

[7] Ms. Reed represented during the deposition that she learned about the dismissal of the Section 11 claims in February, and understood why they were dismissed. Pl. Class Cert. Reply at Ex. 4.

Defendants also argue that Ms. Reed's lack of attendance at the mediation and her expectation that she would not provide an opinion on the mediation makes her an inadequate class representative. The Court does not see Ms. Reed's statements in her deposition as a "total abdication" to counsel.[8] Rather, the context of the question reflects Ms. Reed's understanding that her opinion would not be sought on legal matters.[9] Alone, such a remark is insufficient to show that Ms. Reed cannot act as a class representative. Each of the cases cited by Defendants include proposed class representatives with far less knowledge and involvement than Ms. Reed.[10]

The Court finds that Plaintiffs' evidence meets the standard required to demonstrate Ms. Reed's adequacy to be a class representative. The Third Circuit has noted that "a minimal degree of knowledge about the litigation is adequate" for a class representative. In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 430 (3d Cir. 2016), as

---

She also stated in a second Declaration that she was informed about the dismissal of the claims and the reasons and agreed with the decision. Id. at Ex. 5, ¶5.

[8] The Court also notes that the case cited by Defendants in this context, Charal v. Andes, can be further distinguished by that court's concerns that the proposed class representatives potentially had intra-party claims and that some of their interests conflicted with those of the proposed class members. 81 F.R.D. 99, 102 (E.D. Pa. 1979).

[9] After asking whether Ms. Reed expected to "weigh in on whether the case is resolved during the mediation" counsel for Plaintiff objects and asks for clarification. Ms. Reed responds that she "wouldn't do the job of a lawyer. I trust that they would speak in lawyer terms." Defendants' counsel then asks, "Do you expect your opinion will be sought?" to which Plaintiff responds, "No." Def. Class Cert. Dec. at Ex. 10, p. 9, Doc. 204-10.

[10] For example, the plaintiff in one of these cases was a pension plan whose representative, during a deposition, said that she had never seen a central document, could not point to any false statements in the document, did not know whether the stock price dropped, and did not know what could have caused the price to drop. In re Kosmos Energy Ltd. Sec. Litig., 299 F.R.D. 133, 146-57 (N.D. Tex. 2014).

amended (May 2, 2016).  When Plaintiffs have "communicated with their lawyers, reviewed

filings prior to their submission to the Court, and have aided counsel to discovery requests" and

"shown a basic understanding of the facts and claims underlying [the] litigation," the adequacy

prong is met.  W. Palm Beach Police Pension Fund v. DFC Glob. Corp., 2016 WL 4138613, at

*10 (E.D. Pa. Aug. 4, 2016).

Plaintiffs have offered evidence through Mr. Vrakas's and Ms. Reed's declarations that

they "have been actively involved throughout this litigation including investigating the claims set

forth in the [Amended Complaint], reviewing Court filings, providing fulsome discovery

responses, staying in close contact with and overseeing counsel and committing the necessary

resources to prosecute this action."  Pl. Class Cert. Mem. at 12.

The Court finds that Plaintiffs have offered sufficient evidence to meet their burden that

both Mr. Vrakas and Ms. Reed are adequate Class representatives.  The Court also has reviewed

the exhibit (Pl. Class Cert Dec. at Ex. 5, (Doc. 184-7)) and briefing proffered by Plaintiffs in

support of its request to appoint Levi & Korsinsky LLP as Class Counsel.  Defendants have not

objected to appointing Levi & Korsinsky as Class Counsel.  The Court is satisfied that counsel is

adequately qualified to represent the Class.

### 2. Rule 23(b) Predominance and Superiority of a Class Action

#### a. Predominance

Besides meeting the requirements of Rule 23(a), Plaintiffs also must satisfy the two

requirements under Rule 23(b)(3) that "(a) questions of law or fact common to class members

predominate over any questions affecting only individual members; and (b) that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  The

relevant inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

In securities fraud actions, "[w]hether common questions of law or fact predominate…often turns on the element of reliance." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011) ("Halliburton I"). Plaintiffs maintain that they are entitled to a presumption of reliance established under Basic Inc. v. Levinson. 485 U.S. 224 (1988). In such cases, a proposed class representative must make the following showing:

1. that the alleged misrepresentations were publicly known;

2. that they were material;

3. that the stock traded in an efficient market; and

4. that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 268 (2014) ("Halliburton II"). As Defendants' statements were made in SEC filings, press releases and earning calls, Plaintiffs state that it is indisputable that they were public. Pl. Class Cert. Mem. at 15. Under Amgen, Plaintiffs need not prove materiality at the class certification stage. 568 U.S. at 459-60. Plaintiffs also provided declarations by Plaintiffs that they traded stock during the relevant time. Pl. Class Cert. Mem. at 15. Thus, Plaintiffs concentrate their Memorandum on market efficiency.

Plaintiffs first posit that the fact that U.S. Steel's securities listings are on the NYSE and CBOE sufficiently demonstrates market efficiency. Id. at 16. Plaintiffs cite other cases in this

Circuit to suggest that "stock trades on the New York Stock Exchange ('NYSE')[11] [are] consistently recognized by courts—including the Third Circuit and other United States Courts of Appeals—as open and developed and thus well suited for application of the fraud on the market theory." In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 2013 WL 396117, at *11 (D.N.J. Jan. 30, 2013) (internal quotations omitted).

Additionally, the court in Merck found that in such cases, conducting an analysis under the Cammer factors[12] was unnecessary, as such factors would be more "useful to determine efficiency if the market on which a security is traded is less open and well-developed than the NYSE." Id. As Defendants do not contest efficiency or any specific aspect of Plaintiffs' Cammer analysis, this Court agrees with the reasoning in Merck and finds that market efficiency is established without delving into the Cammer factors.[13]

Lastly, Plaintiffs contend that damages can be determined on a class-wide basis. Pl. Class Cert. Mem. at 27. Specifically, they argue that damages in these types of actions are measured as the "out-of-pocket" loss suffered by Class members, and are "measured by the change at the time of purchase and sale by an investor in the daily artificial inflation in the stock price caused by Defendants' misrepresentations and/or omissions and is calculated as the difference between the actual prices paid for U.S. Steel stock or options less the value of the

---

[11] Plaintiffs also cite cases applying the same for options traded on the Chicago Board Options Exchange. See Cammer v. Bloom, 711 F. Supp. 1265, 1292 (D.N.J. 1989). The Court sees the analysis here as the same for both.

[12] Many district courts have used factors from Cammer in determining whether a security trades in an efficient market. Pl. Class Cert. Mem. at 17.

[13] Plaintiffs also cite three factors established in Krogman v. Sterritt as other factors courts have considered in determining market efficiency. Again, the Court does not see a need to address these factors as Defendants do not contest market efficiency. 202 F.R.D. 467, 478 (N.D. Tex. 2001).

securities absent the alleged misrepresentations and/or omissions had the truth been disclosed." Id., citing In re Royal Dutch/Shell Transport Secs. Litig., 404 F. Supp. 2d 605, 610 (D.N.J. 2005).

Plaintiffs state that the damages calculation would be the same for all putative class members, although there are "several commonly used methods to calculate artificial inflation." Pl. Class Cert. Mem. at 27. Plaintiffs further argue that such calculations will generally be mechanical and not require much additional information. Id. at 27-28. According to Plaintiffs, all that is required is an event study, along with U.S. Steel Company-specific information, to determine the amount of inflation in the prices of Company stock and options caused by the alleged misstatements and omissions based on the price reaction to the corrective disclosure made on April 25, 2017, which would constitute the "but-for price." Id. at 28. According to Plaintiffs, this but-for price does not depend on an investor's individual investment profile or characteristics, and thus daily inflation levels could be calculated and applied to the Company's stock price on a class-wide basis to determine out-of-pocket damages. Id. These same issues would predominate Plaintiffs' § 20(a) claims. Merck Sec. Deriv., 2013 WL 396117, at *13.

Defendants do not contest the element of reliance. Instead, Defendants argue that Plaintiffs have failed to supply a damages model that fits their liability theory, or provide a workable methodology to address damages on a class-wide basis. Def. Class Cert. Opp. As to their first point, Defendants argue that the standards in Comcast Corp. v. Behrend mean that Plaintiffs' damages model must "measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 569 U.S. 27, 35 (2013).

Defendants argue that Plaintiffs' expert, Dr. Hartzmark's report ("Opening Report," Doc. 184-1) is flawed because his damages methodology "also assess[es] damages based on the theories the Court dismissed." Def. Class Cert. Opp. at 10. Defendants analogize Comcast, which precluded class certification because the plaintiffs' damages model did not adequately differentiate between damages attributable to the dismissed theories of liability versus the remaining theory. The Court does not believe that the same facts in Comcast exist here.

Primarily, the Court agrees with Plaintiffs that although other claims against Defendants were dismissed, they operated under the same theory of liability—that of alleged misrepresentations and omissions—as the one remaining claim. And so, the issue is not about confounding theories, but information. Any proposed damages model would need to disaggregate the other statements that were dismissed, along with other confounding information, if any, which is an issue that Defendants' second critique addresses. In Comcast, on the other hand, there were four separate antitrust allegations based on four different theories of antitrust liabilities.[14]

Further, the Third Circuit has found that Comcast did not create a broad-based, 23(b) rule that Plaintiffs must show that "damages are susceptible of measurement across the entire class

---

[14] Plaintiffs in Comcast alleged four separate antitrust theories: (1) clustering made it profitable for Comcast to withhold local sports programming from competitors, which decreased market penetration by direct broadcast satellite providers; (2) Comcast's activities reduced competition from "overbuilders," or companies building competing cable networks in areas where others already operated; (3) Comcast reduced levels of "benchmark" competition for customers to compare prices, and (4) clustering increased Comcast's bargaining power relative to other content providers. 569 U.S. at 31. The only surviving theory was the "overbuilders" theory. Id.

As Plaintiffs state, they "have only one theory of liability—Defendants made misstatements that caused one uniform injury (the artificial inflation) to one variable (the price of U.S. Steel stock)." Pl. Class Cert. Reply at 2. Dr. Hartzmark's damages method is based on this theory, and the main issue is not that there are other confounding theories of liability (as there were in Comcast), but rather potentially confounding facts and information. Thus, Comcast is inapposite.

for purposes of Rule 23(b)(3)." <u>Neale v. Volvo Cars of N. Am., LLC</u>, 794 F.3d 353, 374 (3d Cir. 2015) (internal quotations and citations omitted). Instead, the Third Circuit emphasizes that the "Supreme Court specifically noted that it was not breaking any new ground by stating at the beginning of its opinion" and that "[a] close reading of the text above makes it clear that the predominance analysis was specific to the antitrust claim at issue." <u>Id.</u> Finally, the court concluded that, "[e]very question of class certification will depend on the nature of the claims and evidence presented by the plaintiffs. What we know for sure is that whatever <u>Comcast's</u> ramifications for antitrust damages models or proving antitrust impact, a trial court must consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." <u>Id.</u> (internal quotations and citations omitted).

Plaintiffs cite several cases in this Circuit and elsewhere that affirm the appropriateness of the out-of-pocket methodology that Dr. Hartzmark proposes as a sufficient damages model for class certification purposes.[15] <u>See</u> <u>Bing Li. v. Aeterna Zentaris, Inc.</u>, 2018 WL 1143174, at *2 (D.N.J. Feb. 28, 2018) (holding that at the class certification stage of litigation, Plaintiffs "are not required to produce a detailed damages model" and that this damages model of (1) an event study and (2) inflation ribbon and (3) calculation of per-share damages as the difference between the inflation on the date shares were purchased and the inflation on the date those same shares were subsequently sold was approved in a Central District of California case in 2016).[16] <u>See</u>

---

[15] <u>Neale</u> and these cases in this Circuit suggest that the facts of <u>Comcast</u> are viewed specifically and do not change the fabric of the law on the predominance requirement of Rule 23 in this Circuit.

[16] The court approved an event-study that attempts to isolate "only the decline in [the company's] stock value which can be attributed to the alleged fraud. Accordingly, plaintiffs' proposed methodology will attempt to isolate damages suffered as a result of defendants' alleged fraud. Damages for every class member can be mechanically calculated according to [plaintiffs'

also <u>City of Miami Gen. Empls. Ret. Trust v. RH, Inc.</u>, 2018 WL 4931543, at *3 (N.D. Cal. Oct.

11, 2018), leave to appeal denied, 2019 WL 2193335 (9th Cir. Jan. 24, 2019) ("[T]he out-of-

pocket, or event study, method is the standard measurement of damages in Section 10(b)

securities cases. … Courts regularly affirm that the out-of-pocket, or event study, method

matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act,

making it the standard method for calculating damages in virtually every Section 10(b) class

action."). Plaintiffs further cite cases in other districts that have considered an out-of-pocket

model sufficient even under <u>Comcast</u>, and differentiate Defendants' cited case as one that had

additional challenges of an inefficient market and issues of reliance. Pl. Class Cert. Mem. at

304.[17]

 Defendants criticize Dr. Hartzmark's report as "vague" and failing to separate the

"damages resulting from any one theory…assum[ing] the validity of all four theories." Def.

Class Cert. Opp. at 13-14 (internal quotations and citations omitted). As this Court agrees with

Plaintiffs that dismissed theories of liability in <u>Comcast</u> are different from the dismissed claims

here, the Court does not find that the fact that some of Plaintiffs' claims were dismissed

sufficient to preclude Dr. Hartmzark's damages model. However, the Court will address

Defendants' criticism of vagueness in conjunction with their second criticism with respect to

---

expert's] proposed methodology and are therefore subject to class[-]wide proof. Whether
plaintiffs will ultimately succeed in meeting their full evidentiary burden and whether defendants
may be able to rebut the presumption of reliance are questions for another day." <u>In re Silver
Wheaton Corp. Sec. Litig.</u>, 2017 WL 2039171, at *15 (C.D. Cal. May 11, 2017).

[17] Notably, a number of cases in this Circuit have considered that <u>Neale</u> held that a Comcast
analysis was limited to the specific antitrust issues in its facts, and need not be applied in
securities litigation contexts. <u>See, e.g.</u>, <u>West Palm Beach</u>, 2016 WL 4138613, at *11 (certifying
a class even when experts proposed no damages methodology at all). Either way, the Court finds
that Plaintiffs have met their burden of proving that common issues of law and fact predominate,
and Defendants' opposition addresses concerns that do not relate to predominance.

predominance: that Plaintiffs have not provided a scientifically-rigorous damages methodology, accounting for the circumstances of this case, to prove a class-wide method of addressing damages. Def. Class Cert. Opp. at 9.

Defendants claim that Dr. Hartzmark does not provide a damages model and that there is "grave doubt" that such methodology exists. Def. Class Cert. Opp. at 17. Specifically, they allege that Plaintiffs have not established how they would determine "how much, if any, of the drop in U.S. Steel's securities prices at the end of the class period was attributable to the alleged 'fraud,' and how much was due to other disclosures not at issue in this lawsuit." Id. at 18. Defendants further allege that Plaintiffs have not accounted "for variations in alleged price inflation over the course of the proposed class period." Id. Defendants apply those same challenges to a damages methodology for the U.S. Steel options, stating that Plaintiffs have not "addressed confounding disclosures or time-varying inflation" which means that they have "not provided a rigorous damages model for either U.S. Steel stock or options." Id. Finally, Defendants criticize Dr. Hartzmark's Black-Scholes options pricing model, as he "says nothing about whether he would, or how he could, determine the "but-for" volatility of U.S. Steel's stock price." Id. at 19.

Plaintiffs counter by stating that Defendants' criticisms are based on speculation that Plaintiffs' damages calculation may be incorrect. Pl. Class Cert. Reply at 5. Plaintiffs state that the inputs to the model will be the same for all Class members, and that even if information (including the dismissed misstatements) ultimately will need to be disaggregated, that it does not affect class certification because the way that information will be applied and disaggregated is the same for all proposed Class members. Id. Plaintiffs further cite a number of out-of-district cases that hold that disaggregation does "not impede class certification" because "[t]he answer

for the class will be the same" for all members.  Id., citing Menaldi v. Och-Ziff Cap. Mgmt. Grp., LLC, 328 F.R.D. 86, 98-99 (S.D.N.Y. 2018).

The court in Menaldi held that litigating a case "on a classwide basis does not make [the problem of differentiating between price decline resulting from remaining theory of liability versus one that was dismissed] more or less difficult to solve.  The answer for the class will be the same…." Id. at 99.  The court elaborated by stating, "Thus to the extent Defendants' argument is that Plaintiffs' model fails to account for factual evidence of varied [sources of price decline], that is an argument that goes to the merits of whether Plaintiffs can accurately demonstrate price impact and goes beyond the Rule 23 inquiry" and whether Plaintiffs' damages were caused by the alleged fraud alone or by other factors is a "question of loss causation" that is nonetheless a "common question[] that need not be adjudicated before a class is certified." Id. Although this case is not binding, the Court finds it persuasive.  The information required to solve this question will be the same for all class members.[18]  Whether or not that information is correct will still need to be proven at trial, but that does not affect the validity of Plaintiffs' proposed damages model for all proposed Class members.

Plaintiffs also provide additional information in their Reply to address Defendants' concern that Plaintiffs have not provided guidance on accounting for "variations in alleged price inflation."  Pl. Class Cert. Reply at 7.  First, Plaintiffs highlight that the inflation ribbon will be applied the same way for all proposed Class members—and also note that Defendants' expert,

---

[18] See Expert Rebuttal Report of Michael L. Hartzmark, Ph.D., ¶16 ("Hartzmark Rebuttal," Doc. 206-1). "Dr. Zurek's [Defendants' expert] arguments are irrelevant because any analysis of potential confounding information would be dependent on the claims being tried after discovery is complete…disaggregating confounding information would be based on a disclosure-specific inquiry…" and would be the same for all Class members.  This is followed by many techniques that could be used to disaggregate information when the time arises.

Dr. Zurek agrees that inflation would be the same for all class members.  Id.  They then maintain

that this argument is premature for the class certification stage because it has no bearing on

whether the damages methodology itself applies to all Class members, citing examples of other

courts that have held that this argument more appropriately applies to the "quantification and

allocation of damages" rather than whether common issues of law and fact predominate.  RH,

2018 WL 4931543, at *4 (noting that "courts consistently find [these criticisms] are not

appropriately raised at the class certification stage").  The Court agrees.

The Court finds that Plaintiffs have shown an efficient market and reliance, and

sufficiently established that the proposed damages methodology applies to the class as a whole.[19]

There have been no facts proposed that suggest that individualized issues of facts or law would

predominate over those outlined by Plaintiffs.  The Court further finds that Defendants'

arguments about the appropriateness and detail of Plaintiffs' methodology are premature, and do

not affect whether common issues of law or fact predominate at this stage.

*b.   Superiority of a Class Action*

Plaintiffs argue that a class action is superior to other available methods for the fair and

efficient adjudication of this action.  Specifically, they argue that each of the relevant factors

under Rule 23(b)(3) warrant class certification:

- Class members' interests in individually controlling prosecution of separate
  actions are minimal because the expense of litigating most actions, when weighed
  against individual recoveries, would be prohibitive.

- As the Court has already appointed a Lead Plaintiff and ruled on a motion to
  dismiss, the extent and nature of any litigation about the controversy already
  begun by class members also favors a class action.

---

[19] See Roofer's Pension, 2019 WL 6015392, at *18 ("It is enough for Lead Plaintiff to show that
each of [plaintiffs' expert] proposed methodologies can be used to prove damages on a class-
wide basis, which it has done.")

- The desirability of concentrating litigation in this particular forum favors a class action because this is where the Company is located, where the alleged misconduct mostly occurred and where litigation has been ongoing for years.

- As this case is a "straightforward securities class action," there are not likely to be any "management difficulties."

Pl. Class Cert. Mem. at 29 (internal quotations and citations omitted).

Defendants do not contest the superiority of proceeding as a class action. The Court thus finds that Plaintiffs have met this facet of Rule 23(b)(3).

## B. Motion to Strike

Defendants move to strike Plaintiffs' Expert Rebuttal Report of Michael L. Hartzmark, Ph.D ("Hartzmark Rebuttal") because the Hartzmark Rebuttal "improperly proffers new evidence concerning [P]laintiffs' purported class[-]wide damages methodology and the numerosity of the proposed class that should have been included in Dr. Hartzmark's initial expert report" in violation of Fed. R. Civ. P. 26(a)(2)(d) and 37(c)(1). Def. MTS at 1. Defendants also argue that the Hartzmark Rebuttal contains improper legal analysis of Comcast. Def. MTS Mem. at 5. Defendants ask the Court to strike Dr. Hartzmark's report as improper.

In response, Plaintiffs claim that Defendants' Motion to Strike is a "thinly disguised, improper surreply" and should be rejected on that basis alone. Pl. MTS Opp. at 1. In the alternative, Plaintiffs argue that the Hartzmark Rebuttal properly rebuts arguments cited by Defendants' expert and properly elaborates on topics from Dr. Hartzmark's initial Opening Report filed as an exhibit to Plaintiffs' Motion for Class Certification. The Court will address each of Defendants' objections in turn.

### 1. Timeliness of Filing

The Court first directs Defendants' attention to the Case Management Order. The CMO specifically states that "[a]ll expert discovery, including all depositions, concerning class

certification shall be completed by July 18, 2019" (CMO ¶7) and that "Plaintiffs' reply memoranda supporting class certification, if any, shall be filed on or before July 18, 2019." Id. at ¶13. The Court agrees with Plaintiffs that these portions of the CMO contemplate an expert's rebuttal report, as otherwise all expert discovery would have concluded when Defendants' expert disclosures were due on June 18, 2019. CMO ¶6, Pl. MTS Opp. at 5. As a result, the Court does not find any violation of Fed. R. Civ. P. 26(a)(2)(d) and 37(c)(1), as Plaintiffs operated according to the CMO, and will not strike the Hartzmark Rebuttal based on timeliness.[20]

### 2. Discussion of Damages Methodology

Defendants argue that the Hartzmark Rebuttal contains "all new material, representing an attempt to provide details that should have been incorporated into Dr. Hartzmark's initial report." Def. MTS Mem. at 5. Specifically, they object to Dr. Hartzmark's inclusion of "details missing from his initial report" by providing "a laundry list of techniques that could be used to estimate the portion of the price reaction due to the revelation of the truth" such as "the analysis of intraday pricing…analysis of market and media commentary…and examination of the elements that cause changes in actual or estimated earnings-per share or EBITDA…among others." Id. at 4-5. This is not improper new material. This is a clear and direct rebuttal to Defendants' expert report. As Defendants correctly point out, Dr. Zurek criticized Dr. Hartzmark's damages

---

[20] Defendants' corollary arguments also lack merit. They further argue that the Rebuttal Report "fits with [P]laintifffs' repeated disregard for the Court's scheduling orders." Def. MTS at 10. The Court does not agree. Denying Plaintiffs' motions on other grounds does not reflect an "indifference to the rules and the Court's orders." Id. at 1. Nor does the Rebuttal Report "disrupt[] the Court's class certification proceedings at this late date." Id. As Plaintiffs point out, no trial date has been scheduled, and the Rebuttal Report was contemplated during the scheduling process.

methodology (in Defendants' words—"comprehensively exposed the shortcomings"). Id. at 4. It is proper for Dr. Hartzmark to respond to this criticism in a rebuttal report.[21]

Courts in this district have held that expert rebuttal reports should not be stricken if they contain "an elaboration of" the initial report, and when the rebuttal is "consistent with an opinion/issue previously addressed" in the initial report. Prichard v. Dow Agro Scis., 263 F.R.D. 277, 284-85 (W.D. Pa. 2009). Here, the list of techniques to which Defendants object are a prime example of the type of elaboration permitted in an expert's rebuttal. Dr. Hartzmark is responding directly to Dr. Zurek's criticisms by stating that they are "irrelevant" because even if "disaggregation were appropriate or necessary…there are a multitude of techniques that could be used…." Hartzmark Rebuttal at ¶11.

Indeed, this entire section of the Hartzmark Rebuttal is framed by quoting Dr. Zurek's critique, and responding directly to that criticism. See, e.g., Hartzmark Rebuttal at ¶8 ("Dr. Zurek critiques my damages methodology opinion on the grounds that I do not say … For the two primary reasons explained below, I find Dr. Zurek's critique of my damages methodology to lack merit."). As described in FTC v. Innovative Designs, "it is proper for [plaintiff's expert] to utilize new calculations or methods in an effort to rebut and/or contradict the theories posited by [defendant's] experts" and that "rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." 2018 WL 3611510, at *3 (W.D. Pa. July 27, 2018). Defendants do not adequately respond as to why this constitutes improper rebuttal material. The Court finds that merely calling material "new" and describing it as "an

---

[21] Or, as aptly stated by the case cited by Defendants, a rebuttal report "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." Withrow, 967 F. Supp. 2d at 1002 (internal quotations and citations omitted).

attempt to provide details that should have been incorporated into Dr. Hartmark's initial report" (Def. MTS. Mem. at 5) is insufficient to strike the rebuttal report as a matter of law.[22]

### 3. Discussion of the Applicability of Comcast

Dr. Hartzmark engages in an extensive discussion of the applicability of <u>Comcast</u> to the facts of this matter. Hartzmark Rebuttal at ¶¶24-30. Defendants posit that this is improper legal analysis and must be stricken. Plaintiffs argue that the Hartzmark Rebuttal "provides opinions solely as an economist and only analyzes the economic differences between the individual characteristics of the classes and alleged harm in Comcast as compared to U.S. Steel." Pl. MTS Opp. at 12.

Contrary to Plaintiffs' claims, the Court cannot agree that Dr. Hartzmark's analysis of <u>Comcast</u> is purely economic. Plaintiffs do not address the merits of Defendants' contentions, choosing instead to point fingers at Dr. Zurek and state that he engaged in improper analysis as well. Pl. MTS Opp. at 12-13. Whether or not Dr. Zurek did so does not affect Dr. Hartzmark's analysis.

The Court finds the case cited by Defendants, <u>Smith v. Allstate Ins. Co.</u>, persuasive in this regard. The court in <u>Smith</u> noted that the expert report in question improperly "relie[d] on [the expert's] interpretation and application of a statute" and the expert's report "interprets the applicable…policy and applies his construction of the policy to the facts of this case." <u>Smith v. Allstate Ins. Co.</u>, 912 F. Supp. 2d 242, 252-254 (W.D. Pa. 2012). Similarly, Dr. Hartzmark's six

---

[22] The Court does not agree with Defendants that it was "obvious" that Plaintiffs should have been "on notice" to "provide a rigorous class-wide damages methodology." Def. MTS Mem. at 9-10. First, the Court notes that the case cited by Defendants is out-of-circuit and had additional issues of reliance and market efficiency. Also, that case is inconsistent with the way this Circuit's cases have viewed the effect of <u>Comcast</u> and how damages methodology relates to the predominance requirement of Rule 23(b) during the class certification stage. <u>See</u> discussion *supra*, at 15-17.

paragraphs of analysis on <u>Comcast</u> is based on his interpretation and application of the law in that case and applies his construction of the law in <u>Comcast</u> to the facts of this case.

For instance, Dr. Hartzmark dedicates an entire paragraph in Footnote 50 of his Hartzmark Rebuttal opining on the "substantial differences in the class certification process in antitrust matters…[versus] Section 10(b) securities litigation…" <u>Id.</u> at 17 n.50. The Court finds that is an opinion wholly outside an economist's purview. In fact, "whether the application of the common damages methodology class-wide will have very important individualized challenges" was the very crux of <u>Comcast</u> and a matter of law that this Court discussed *supra*. <u>Id.</u>

The rest of this section does not fare any better. Analyzing why the Supreme Court held what it did in <u>Comcast</u> and citing another court's decision does not help determine the appropriate damages methodology for a class. Hartzmark Rebuttal at ¶¶25-30. It is not Dr. Hartzmark's role to determine whether any legal standards under <u>Comcast</u> apply to this case. Because the Court considers this discussion to be improper, the Court will grant Defendants' motion to strike this portion of the report, Paragraphs 4, 22-30.[23]

4. <u>Discussion of Numerosity</u>

Toward the end of the Hartzmark Rebuttal, Dr. Hartzmark opines on the number of institutional investors that he believes would have potentially recoverable damages. ¶¶5, 34-37. Defendants argue that since Dr. Zurek's report did not address numerosity, this opinion cannot

---

[23] Because the Court is granting this motion to strike on a basis other than Rule 37 or Rule 26(a)(2), the Court does not believe an analysis of the <u>Pennypack</u> factors is necessary to determine whether or not to strike this portion of the Hartzmark Rebuttal. <u>See</u> <u>Smith</u>, 912 F. Sup. 2d at 249 (applying the <u>Pennypack</u> factors in determining whether not to strike expert testimony as a sanction for failure to comply with a discovery order but not doing so for an improper legal analysis).

constitute a rebuttal. Plaintiffs respond that the Hartzmark Rebuttal "properly rebuts arguments made in Defendants' Opposition" because "the very purpose of reply briefs is to analyze responsive briefs and submit argument and evidence in further support of the underlying motion." Pl. MTS Opp. at 14 (emphasis omitted). The Court agrees with Defendants.

The Hartzmark Rebuttal and Plaintiffs' Reply briefing are not synonymous, but complementary. Plaintiffs were of course free to respond to Dr. Zurek's criticisms with respect to numerosity in their Reply, but they conflate the parties' briefing with the expert reports. As Defendants note, Dr. Hartzmark openly states that his opinion on numerosity does not respond to anything Dr. Zurek discussed. Hartzmark Rebuttal at ¶34 ("Although Dr. Zurek does not opine about the number of investors who might have been damaged and thus would be part of the class, I have been asked by Plaintiffs' Counsel to use the information and certain analyses in my Opening Report that is in the record before the Court…"). To view expert rebuttal reports as opportunities to respond to the content of an opposing parties' briefing, would permit parties to circumvent the discovery process and raise wholly unanticipated theories.

The Court also does not believe that this constitutes a permissible elaboration of points made in the Opening Report, i.e., rebuttal. The only discussion of institutional investors in the Opening Report was in a discussion of the efficiency of the market under the Cammer factors, not about numerosity under Rule 23(a). See Opening Report at ¶41. The Court does not find that Dr. Hartzmark's discussion on the number of institutional investors is a rebuttal to Dr. Zurek's report, and will grant Defendants' motion to strike the relevant portions, Paragraphs 5, 34-37, of the Hartzmark Rebuttal.[24]

---

[24] Since Dr. Hartzmark's discussion on numerosity was not a proper rebuttal contemplated by the scheduling order, the Court weighs the following factors provided by the Third Circuit to determine whether or not to exclude improper expert disclosure:

Finally, the Court will not adopt Plaintiffs' view that Defendants' Motion to Strike was improperly filed as a sur-reply to get the last word, as the Court finds some merit in the Motion to Strike. For the reasons outlined above, the Court will strike ¶¶4-5, 24-30 and 34-37 of the Hartzmark Rebuttal.

**II.  Order**

Consistent with the foregoing, Plaintiffs' Motion for Class Certification (Doc. 182) is **GRANTED**. Plaintiffs Christakas Vrakas and Leann Reed are appointed as Class Representatives. Levi & Korsinsky, LLP, is appointed as class counsel. Defendants' Motion to Strike (Doc. 207) is **GRANTED** with respect to Dr. Hartzmark's arguments about numerosity and Comcast and **DENIED** with respect to the remainder of the Hartzmark Rebuttal.

IT IS SO ORDERED.

December 31, 2019                                    s\Cathy Bissoon_____
                                                    Cathy Bissoon
                                                    United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

(1) a discussion on numerosity in the Rebuttal Report would be surprise to Defendants, as their expert did not discuss it at all; (2) that Defendants would not be able to cure that issue; (3) that allowing the discussion would not disrupt the order and efficiency of trial; (4) there is no indication that Plaintiffs acted in bad faith or willfully flouted the Court's order; (5) Plaintiffs' justification that the discussion is a natural expansion of its Opening Report is not persuasive; and (6) as reflected above in the discussion of class certification, the Court does not consider this discussion necessary to its finding that the numerosity requirement has been met.

Given these factors, the Court finds that the portion on numerosity should be stricken. Withrow v. Spears, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-5 (3d. Cir. 1977) (overruled on other grounds).