# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| *In re U. S. Steel Consolidated Cases* | Civil Action No. 17-579 <br><br> Judge Cathy Bissoon |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................... 1

II.     PROCEDURAL HISTORY OF THE LITIGATION ......................................... 4

    A.      Pretrial Proceedings ............................................................... 4

    B.      Investigation, Fact, and Expert Discovery ............................... 5

    C.      The U. S. Steel Defendants' Motion for Class Decertification............................. 6

    D.      Arm's-Length Settlement Negotiations .................................. 7

III.    THE SETTLEMENT TERMS...................................................................... 7

IV.     THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS.......... 9

V.      PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE SETTLEMENT CLASS....................... 10

    A.      The Proposed Settlement Is Fair .......................................... 12

    B.      The Benefits Under the Settlement Are Adequate................. 15

    C.      The Other Rule 23(e)(2) Factors Are Met .......................... 19

        1.      The Proposed Method for Distributing Relief Is Effective..................... 19

        2.      Attorneys' Fees and Expenses ................................ 20

        3.      The Settling Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion .............................. 21

        4.      Settlement Class Members Are Treated Equitably.................. 21

VI.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS 22

    A.      Retention of A.B. Data as Claims Administrator ................. 22

    B.      Proposed Notice Procedures ................................................ 22

VII.    PROPOSED SCHEDULE OF EVENTS......................................... 24

VIII.   CLASS CERTIFICATION........................................................... 25

IX.     CONCLUSION........................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012) ................................................................. 14

*Bell v. Fore Sys.*,
  2003 U.S. Dist. LEXIS 26676 (W.D. Pa. Dec. 22, 2003) ........................................ 20

*Bodnar v. Bank of Amer., N.A.*,
  No. 14-3224, 2016 WL 4582084 (E.D. Pa. Aug. 4, 2016) ...................................... 21

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ............................................................... 15

*Chludzinski v. NWPA Pizza, Inc., et al.*,
  Case No. 1:20-cv-163 (W.D. Pa.) (Bissoon, J.) ..................................................... 20

*Conley v. Cabot Oil and Gas Corp.*,
  Case No. 2:17-cv-01391 (Bissoon, J.) .................................................................... 20

*Curiale v. Lenox Grp., Inc.*,
  2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .......................................................... 10

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .................................................................................... 10

*E-Trade Fin. Corp. Sec. Litig.*,
  No. 07-cv-8538 (S.D.N.Y. 2007) ............................................................................ 13

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .............................................................................. *passim*

*Goldman Sachs Group, Inc. v. Ark*ansas Teacher Retirement System,
  141 S. Ct. 1951 (2021) ............................................................................................ 17

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 4, 2019) ..................................................... 12, 14

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................... 18

*In re Illumina, Inc. Sec. Litig.*,
  No. 3:16-cv-03044 (S.D. Cal. Mar. 2, 2020) ........................................................ 13

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ................................................................. 12, 15

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. 08–CV–285 (DMC), 2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................................ 21

*In re PAR Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) .......................................................... 15, 18

*In re Philips/Magnavox Television Litig.*,
  2012 WL 1677244 (D.N.J. May 14, 2012) ............................................................... 14

*In re Prothena Corp. plc Sec. Litig.*,
  No. 1:18-cv-06425 (S.D.N.Y. Oct. 28, 2019) ........................................................... 13

*In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722
  (D.N.J. Mar. 26, 2010) ................................................................................ 11, 13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................... 10, 12, 13, 22

*Jones v. Commerce Bancorp, Inc.*,
  2007 WL 2085357 (D.N.J. July 16, 2007) ............................................................ 11, 24

*Li v. Aeterna Zentaris Inc., et al.*,
  No. 3:14-cv-07081-PGS-TJB, 2021 WL 2220565 (D.N.J. June 1, 2021) ................................... 20

*Rougier v. Applied Optoelectronics, Inc., et al.*,
  No. 17-cv-2399 (S.D. Tex. 2021) ...................................................................... 13

*Sanders v. CJS Solutions Grp., LLC*,
  2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ............................................................. 15

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) .......................................................................... 14

*Whiteley v. Zynerba Pharm., Inc.*,
  2021 WL 4206696 (E.D. Pa. Sep. 16, 2021) ............................................................. 20

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................................................... 3, 8, 20

**Other Authorities**

*Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements: 2021 Review and*

*Analysis* (Cornerstone Research 2022) ...................................................................... 18

*Manual for Complex Litigation*
    §21.63 (4th ed. 2004) ...................................................................... 10, 24

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 22

Fed. R. Civ. P. 23(e) ...................................................................... 3, 10, 22

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................... 22

Fed. R. Civ. P. 23(e)(2) ...................................................................... passim

Fed. R. Civ. P. 23(e)(2)(A)-(B) ...................................................................... 12, 14

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ...................................................................... 19, 20, 21

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................... 21

Fed. R. Civ. P. 23(e)(3) ...................................................................... 11, 23

Fed. R. Civ. P. 23(f) ...................................................................... 13

Court-appointed Lead Plaintiff Christakis Vrakas and plaintiff Leeann Reed (collectively "Plaintiffs"),[1] by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement.

## I.      INTRODUCTION

Plaintiffs respectfully request that the Court grant preliminary approval of the parties' $40 million all cash settlement. The Settlement is the product of nearly five years of hard-fought litigation among sophisticated parties and experienced counsel, and follows extensive, arm's-length mediation and settlement discussions overseen by several experienced mediators and the Court. As set forth in the Stipulation, the proposed $40 million all cash Settlement will resolve this securities class action against all remaining defendants. The Settlement is an excellent result for the Settlement Class, particularly when viewed in light of the risks of further litigation and trial.

This securities class action arises out of the U. S. Steel Defendants'[2] allegedly false and misleading statements and omissions concerning: (i) U. S. Steel's investment in, and implementation of, a reliability centered maintenance ("RCM") program; (ii) the benefits achieved from RCM; and (iii) U. S. Steel's capacity to meet demand. Plaintiffs allege that these material misstatements and omissions caused the Company's common stock and options to trade at artificially inflated prices during the Settlement Class Period. The Amended Complaint further alleges the truth about the U. S. Steel Defendants' misrepresentations was revealed after market

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation") attached as Exhibit 1 to the Declaration of Shannon L. Hopkins in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement ("Hopkins Decl."). All citations and internal quotation marks are omitted and emphasis is added, unless otherwise indicated.

[2] The U. S. Steel Defendants are United States Steel Corporation ("U. S. Steel" or the "Company") and Mario Longhi, David B. Burritt and Dan Lesnak (collectively, the "Individual Defendants" and, together with U. S. Steel, the "U. S. Steel Defendants"). The U. S. Steel Defendants are the only defendants remaining in this action and party to the Stipulation.

close on April 25, 2017, when the U. S. Steel Defendants disclosed the Company had to take its steel-making assets offline and increase "revitalization" spending by 50% to bring those assets to a reliable state, thereby rendering U. S. Steel unable to meet demand in an improving market. Plaintiffs allege this news caused U. S. Steel's stock price to fall 27% from $31.11 per share on April 25, 2017 to $22.78 per share on April 26, 2017, thereby causing significant economic harm to Plaintiffs and the Settlement Class. The U. S. Steel Defendants deny all of Plaintiffs' allegations.

Plaintiffs and their counsel were well informed of the strengths and weaknesses of their claims and the U. S. Steel Defendants' defenses as they negotiated the Settlement. In addition to the Court's thorough rulings denying, in part, Defendants' motion to dismiss (ECF No. 133) and granting Plaintiffs' motion for class certification (ECF No. 215), Plaintiffs had developed a robust factual record through their extensive pre-filing investigation, thorough discovery, and analysis and insights from the parties' experts. By the time of the Settlement, Plaintiffs' investigation and discovery included: (i) review of more than 2.5 million pages of documents produced from the U. S. Steel Defendants and third parties pursuant to over fifty subpoenas; (ii) serving and responding to written discovery; (iii) class certification discovery, including of Plaintiffs and their market efficiency expert; (iv) taking depositions of 25 fact witness (including a seven-part deposition of U. S. Steel) and defending eight depositions consisting of Plaintiffs, four confidential witnesses cited in the Amended Complaint, and Mr. Vrakas's investment advisor; (v) expert discovery, consisting of the retention of six experts, who produced reports and sat for depositions that Plaintiffs defended, and taking the depositions of the U. S. Steel Defendants' six retained experts, including two depositions of the U. S. Steel Defendants' damages expert; (vi) full briefing of the U. S. Steel Defendants' motion for class decertification; (vii) attending four separate mediation sessions with the U. S. Steel Defendants, overseen by experienced mediators; and (viii) attending

a settlement conference with the Court.

As detailed herein, the proposed Settlement is an excellent one, and Plaintiffs respectfully request that the Court preliminarily approve it and approve the form and manner of providing notice of it to the Settlement Class.

At this first stage of settlement approval, courts must evaluate whether they are likely to approve the terms of a settlement under Rule 23(e), as amended in 2018, and under the *Girsh* standards. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). As discussed below, the Settlement meets these standards because it is a fair, reasonable, and adequate resolution for the Settlement Class, and balances the objective of securing the highest possible recovery against the substantial risks and costs of continued litigation, including the risk the Settlement Class could receive nothing or an amount equal to or less than the Settlement Amount years into the future. Accordingly, Plaintiffs and Lead Counsel, who litigated this case from inception, believe the Settlement is an excellent result and is in the best interests of the Settlement Class. Moreover, the Settlement is fair, reasonable and adequate because, under the Stipulation, each Settlement Class Member is treated equitably. Each Settlement Class Member that submits a valid Claim Form will receive a *pro rata* share of the recovery under the terms of the Plan of Allocation.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Settlement Class and a Final Approval Hearing and other related dates may be scheduled. At the Final Approval Hearing, Plaintiffs will ask the Court to make final determinations as to: (i) whether the Settlement is fair, reasonable, and adequate; (ii) whether the Plan of Allocation should be approved; and (iii) Lead Counsel's request for an award of attorneys' fees and Litigation Expenses, and amounts to be awarded to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

## II.       PROCEDURAL HISTORY OF THE LITIGATION

### A.       Pretrial Proceedings

Beginning on May 3, 2017, two class action complaints were filed in the Western District of Pennsylvania on behalf of purchasers of U. S. Steel securities against certain of the U. S. Steel Defendants asserting violations of the federal securities laws. By Order dated August 16, 2017, the Court consolidated the two actions, appointed Christakis Vrakas as Lead Plaintiff and approved Levi & Korsinsky, LLP as Lead Counsel.  ECF No. 47.

On October 2, 2017, Plaintiffs filed the Amended Complaint against the U. S. Steel and Underwriter Defendants asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15(a) of the Securities Act of 1933 (ECF No. 54), as revised on October 17, 2017 (ECF No. 65).[3] The Amended Complaint alleged, among other things, that during the Settlement Class Period (January 27, 2016 through April 25, 2017, inclusive), the U. S. Steel Defendants made a series of material misrepresentations that failed to disclose U. S. Steel had abandoned its RCM program and engaged in indiscriminate cost-cutting in response to poor steel market conditions. *Id.* Thus, U. S. Steel did not achieve the touted benefits from RCM during the Settlement Class Period and did not have capacity to meet demand. *Id.* The Amended Complaint further alleged that these material misstatements and omissions caused U. S. Steel securities to trade at artificially inflated levels and when the true facts concerning the U. S. Steel Defendants' alleged misrepresentations and omissions were revealed, the price of U. S. Steel securities declined resulting in financial losses to Settlement Class Members.

On December 14, 2017, the U. S. Steel and Underwriter Defendants separately moved to dismiss the Amended Complaint. ECF Nos. 109-115. Plaintiffs filed an opposition to those

---

[3] A third plaintiff, Robert Myer, also joined in the filing of the Amended Complaint, but then voluntarily dismissed all of his claims on March 4, 2019. ECF No. 173.

motions on February 12, 2018 (ECF No. 121), and Defendants replied on March 14, 2018. ECF No. 126. On September 29, 2018, the Court denied in part and granted in part Defendants' motions to dismiss. ECF No. 133. The U. S. Steel and Underwriter Defendants then separately answered the Amended Complaint on November 15, 2018. ECF Nos. 153, 154.

On March 15, 2019, Plaintiff Reed and all Defendants filed a Stipulation of Dismissal of Securities Act Claims, dismissing, with prejudice, all claims brought pursuant to the Securities Act asserted in the Amended Complaint, which the Court approved on March 18, 2019. ECF No. 176.

On April 19, 2019, Plaintiffs moved for class certification. ECF Nos. 182-184. In connection with class certification, the parties produced expert reports, deposed each other's experts, and filed opening, opposition, and reply briefs. The U. S. Steel Defendants also deposed Lead Plaintiff Vrakas, Plaintiff Reed and Mrs. Reed's husband, Chad Reed. The parties also fully briefed the U. S. Steel Defendants' motion to strike the rebuttal expert report of Plaintiffs' market efficiency expert. ECF Nos. 207-211. On December 31, 2019, the Court issued an Order granting Plaintiffs' motion for class certification and granting, in part, the U. S. Steel Defendants' motion to strike. ECF No. 215.

On May 28, 2020, the Court granted Plaintiffs' unopposed Motion for Approval and Dissemination of Class Notice to potential Class members. ECF No. 225. Pursuant to the Court's order, the Claims Administrator disseminated 217,694 Class Notices to potential class members notifying them, among other things, that the class had been certified and of their right to seek exclusion from the certified class. In response to the Class Notice, 37 persons and entities requested exclusion from the class. *See* Stipulation, Appendix 1.

### B.    Investigation, Fact, and Expert Discovery

Through their investigation and fact and expert discovery, Plaintiffs developed substantial

information and evidence in support of their claims. Written discovery was broad, directed at all Defendants, over fifty third parties, and Lead Plaintiff Vrakas, Plaintiff Reed and her husband, and included the production of over 2.5 million pages of documents, in addition to interrogatories and requests for admission. The parties engaged in numerous lengthy meet-and-confer sessions concerning multiple discovery disputes, some of which required Court resolution, with the majority resolved without Court intervention.

Expert discovery for merits issues commenced in June 2021. The parties exchanged opening, rebuttal, and reply expert reports from eleven total experts—six from Plaintiffs and five from the U. S. Steel Defendants—covering a variety of issues, including RCM processes, the maintenance of steelmaking equipment, statistical analysis, insider trading and executive compensation, economic conditions in the steel market during the Class Period and loss causation and damages. The parties deposed all experts.

### C.     The U. S. Steel Defendants' Motion for Class Decertification

On September 21, 2021, the Court held a Settlement Conference during which it explored Settling Parties' respective settlement positions, which did not result in a settlement, and set a briefing schedule for the U. S. Steel Defendants' Motion for Class Decertification. The U. S. Steel Defendants filed their Motion for Class Decertification on October 21, 2021. ECF Nos. 316-18. The decertification motion sought to decertify the certified class on grounds that the alleged misstatements did not cause any impact on U. S. Steel's stock price and the Plaintiffs did not suffer any damages and, thus, lacked standing to represent the class.

Thereafter, Plaintiffs continued the deposition of the U. S. Steel Defendants' expert, who submitted a new report in connection with the decertification motion, and filed their opposition to decertification on December 3, 2021. ECF No. 321. The U. S. Steel Defendants sought and

received permission to file a Reply in Further Support of Class Decertification, which they filed on December 13, 2021. ECF Nos. 323, 324, 326.

### D.     Arm's-Length Settlement Negotiations

The parties engaged in settlement discussions over the course of more than three years at various points in time during the litigation through four mediations overseen by experienced mediators with decades of experience mediating large complex class actions, including securities class actions. The details of the parties' mediation sessions are discussed more fully below in §IV. The parties also engaged in one settlement conference with the Court.

Following the fourth mediation session on February 15, 2022, and after subsequent discussions, mediator David Murphy, Esq., of Phillips ADR, issued a double-blind proposal to settle all the claims in exchange for $40 million in cash, which the parties accepted. The parties informed the Court of the Settlement by telephone and email on February 25, 2022.

## III.     THE SETTLEMENT TERMS

Under the agreed-upon terms of the Settlement, the U. S. Steel Defendants will pay or cause to be paid $40 million into the Settlement Fund Account, which amount, plus accrued interest, constitutes the Settlement Fund.

*First*, the costs associated with providing notice to the Settlement Class, and subsequent settlement administration ("Notice and Administration Costs"), will be funded out of the Settlement Fund. Plaintiffs propose that nationally recognized class action settlement administrator A.B. Data, Ltd., which the Court approved to provide notice of this Action as a class action (ECF No. 225), likewise be approved to provide notice and claims administration services in connection with the Settlement.

*Second*, because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned is taxable. All Taxes and tax expenses (such as

expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

*Third*, assuming the Court preliminarily approves the Settlement, Plaintiffs will timely move for final approval of the Settlement. Concurrent with Plaintiffs' final approval motion, Lead Counsel will submit an application for an award of attorneys' fees not to exceed one-third (33 and 1/3%) of the Settlement Fund and payment of expenses and charges resulting from the prosecution of the Action not to exceed $3,300,000, as well as proposed awards to Lead Plaintiff Vrakas of $70,000 and Plaintiff Reed of $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class. Such awards and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses. The Court's consideration of any request for fees or expenses will be separate from its review of the fairness, reasonableness, and adequacy of the Settlement, and therefore not affect the Court's consideration of final approval of the Settlement.

*Fourth*, once Notice and Administration Costs, Taxes, Court-approved attorneys' fees and expenses and any award(s) to the Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4), and any other fees or expenses approved by the Court have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following that distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their U. S. Steel purchases and sales.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release any and all claims against the U. S. Steel Defendants based on, arising out of, or in connection with both: (i) the purchase of U. S. Steel common stock and options between January

27, 2016  and April 25, 2017, inclusive; and (ii) the facts, matters, statements, or omissions alleged in the Action. Stipulation, §IV.3.

## IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS

The parties engaged in extensive arm's-length negotiations through four mediations and one Court settlement conference, all of which were personally attended by Lead Plaintiff Vrakas. The first in-person mediation session occurred before the Hon. Layn R. Phillips (Ret.) on May 15, 2019, but the parties did not reach a settlement. In advance of that session, the parties exchanged (and submitted to Judge Phillips) detailed initial and responsive mediation statements addressing liability and damages. The mediation briefs addressed the evidence to date and legal arguments each side believed supported their respective claims and defenses.

Following the first mediation session, the parties continued with the discovery and class certification briefing described above. The parties held a second mediation session on April 19, 2021 before experienced mediator Robert Meyer, Esq., and did not reach a settlement. Thereafter, the parties continued with merits and expert discovery. On August 26, 2021, the parties held a third mediation session with Mr. Meyer, and did not reach a settlement at the session. Thereafter, the parties concluded expert discovery, attended a Court settlement conference and fully briefed the U. S. Steel Defendants' Motion for Class Decertification. The parties exchanged detailed position statements and accompanying materials based on the developed factual record before each of the sessions with Mr. Meyer and the Court.

On February 15, 2022, the parties held a fourth mediation session with David Murphy, Esq. and did not reach a settlement at this session. After the fourth mediation session, Mr. Murphy continued discussions with the parties. Following additional negotiations, Mr. Murphy issued a double-blinded mediator's proposal to resolve the Action for $40 million. The parties accepted Mr. Murphy's recommendation and, on February 28, 2022, executed a Term Sheet that, among

other things, provided for an agreement to settle the claims alleged in the Action for $40 million.

## V.        PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE SETTLEMENT CLASS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("claims…of a certified class - or a class proposed to be certified for purposes of settlement - may be settled…only with the court's approval."). Settlement of class action litigation is both favored and encouraged in Third Circuit courts. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

The Manual for Complex Litigation describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) ordering dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004). At this juncture, Plaintiffs request that the Court: (1) enter the proposed Preliminary Approval Order; (2) order the dissemination of notice to the Settlement Class; and (3) set a time for the final approval hearing.

Pursuant to Rule 23(e), as recently amended, preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class

for purposes of judgment on the proposal."[4] Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Commerce Bancorp, Inc*., No. 05-cv-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). Rule 23(e)(2) provides:

> (2)     Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account:
>
> > (i)     the costs, risks and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)     the proposal treats class members equitably relative to each other.

These factors overlap with those set forth by the Third Circuit in *Girsh*, 521 F.2d at 157, which include:

> . . . (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . .[5]

The Third Circuit has held that there is an initial "presumption of fairness" of the Settlement if the Court finds that: "(1) the settlement negotiations occurred at arm's length; (2)

---

[4] The Court certified the class on December 31, 2019, and there is no difference between the class previously certified and the Settlement Class that the proposed Settlement will bind.

[5] The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig*., No. 09-CV-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Warfarin Sodium*, 391 F.3d at 535; *see also, e.g., Huffman v. Prudential Ins. Co. of Am*., No. 2:10-cv-05135, 2019 WL 1499475, at *5 (E.D. Pa. Apr. 4, 2019) (granting final approval, analyzing amended Rule 23(e)(2) and the *Girsh* factors). These factors warrant preliminary approval here.

### A.     The Proposed Settlement Is Fair

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations. *See* Rule 23(e)(2)(A)-(B). These two factors dovetail into the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *In re Ins. Brokerage Antitrust Litig*., 282 F.R.D. 92, 102 (D.N.J. 2012) ("a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors").

Here, the Settlement is presumptively fair because it was the result of extensive arm's-length negotiations conducted by experienced counsel before highly respected independent mediators, and the parties completed extensive fact and expert discovery and thereby had an adequate understanding of the merits of the case.

First, Plaintiffs and Lead Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action on its behalf, including, among other things, drafting complaints, opposing and defeating Defendants' motions to dismiss, obtaining over 2.5 million pages of documents produced by the U. S. Steel Defendants and third parties who produced in response to over fifty subpoenas, propounding and responding to written discovery, collecting and producing substantial discovery from their own files, successfully

moving for class certification and opposing the U. S. Steel Defendants' Rule 23(f) petition to the Third Circuit to appeal this Court's class certification order, taking and defending 47 fact and expert depositions, concluding expert discovery, fully briefing the U. S. Steel Defendants' class decertification motion, and preparing for and engaging in four mediation sessions and one settlement conference with the Court. Lead Counsel are highly experienced in prosecuting complex securities class actions in this Circuit and throughout the country and have successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See, e.g., E-Trade Fin. Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y. 2012) ($79 million recovery for the shareholder class); *Rougier v. Applied Optoelectronics, Inc., et al.,* No. 17-cv-2399 (S.D. Tex. 2020) ($15.5 million)*; In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-03044 (S.D. Cal. 2021) ($13.85 million)*; In re Prothena Corp. plc Sec. Litig.,* No. 1:18-cv-06425 (S.D.N.Y. 2019) ($15.75 million).

Moreover, the Court-appointed Lead Plaintiff Vrakas is a sophisticated investor with decades of investing experience and was the business owner of Atlas Engineering Inc., a design and project management company specializing in the design of offshore platforms, pipelines, and onshore oil and gas facilities. ECF No. 184-5. Mr. Vrakas also has a bachelor of science in mechanical engineering and a master of science in engineering. *Id.* The experience, expertise, and tenacity of Lead Counsel, and the sophistication of Lead Plaintiff, led to this excellent result, which will provide significant and immediate relief to the Settlement Class.

Given the advanced stage of the litigation, there can be no doubt that "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement. *Warfarin Sodium*, 391 F.3d at 537; *Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010). As detailed above in §II, by the time of Settlement, Plaintiffs had engaged in extensive fact discovery, expert discovery, and motion practice, and therefore had a keen

awareness of the risks of continued litigation, including the strength of the evidence that would be introduced at a trial. *See Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (applying the *Girsh* factors and finding discovery efforts weighed in favor of approving settlement); *see also In re Philips/Magnavox Television Litig.*, No. 09-cv-3072 (CCC), 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent.").

All of this, combined with Lead Counsel's extensive experience in securities fraud litigation, provided a strong base upon which to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Huffman*, 2019 WL 1499475, at *4 (the court should "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action").

Second, the Settlement was negotiated at arm's length, as contemplated by Rule 23(e)(2)(B). As detailed above in §IV, the parties' settlement negotiations spanned several years and involved four mediation sessions with three different experienced mediators, as well as many follow up teleconferences, phone calls, and e-mail communications. The negotiations were vigorous and adversarial, and the U. S. Steel Defendants are represented by highly sophisticated counsel. It was not until after these lengthy, contentious settlement negotiations that Mr. Murphy issued a double-blinded "mediator's proposal" that recommended the amount of the Settlement,

which the parties ultimately accepted. Mr. Murphy's direct participation further ensures that negotiations were non-collusive and conducted at arm's length. *Bredbenner v. Liberty Travel, Inc*., No. 09-905 (MF), 2011 WL 1344745, at \*10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").[6]

### B.     The Benefits Under the Settlement Are Adequate

Rule 23(e)(2)(C)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense and likely duration of the litigation). This aspect of Rule 23(e)(2)(C)(i) also weighs in favor of approval.

"Securities fraud class actions are notably complex, lengthy, and expensive[.]" *In re PAR Pharm. Sec. Litig*., No. 06-3226 (ES), 2013 WL 3930091, at \*4 (D.N.J. July 29, 2013). Despite the advanced stage of the litigation, this case would still face a significant risk of substantial delay before ultimate resolution, including delays associated with briefing summary judgment, scheduling trial, and potential appeals that could last for years into the future. *See Ins. Brokerage Antitrust Litig*., 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class."). The near-term relief that the Settlement provides to Settlement Class Members warrants approval in light of the delays inherent in continued litigation.

---

[6] *See also Sanders v. CJS Solutions Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 1116017, at \*2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

Further, the relief is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat the U. S. Steel Defendants' counterarguments regarding) falsity, materiality, scienter, loss causation and damages at trial, as well as that Rule 23's certification requirements were met. *See Girsh*, 521 F.2d at 157 (risks of establishing liability, damages and maintaining a class action support settlement approval).

Although Plaintiffs believe their case is strong, they acknowledge, as they must, there are risks to litigation and ultimate recovery. The U. S. Steel Defendants' arguments highlight the risks Plaintiffs would face proving their claims. For example, the U. S. Steel Defendants strenuously argued that Plaintiffs have not adduced evidence to support jury findings that any alleged misstatements regarding RCM and the benefits of RCM that U. S. Steel said it achieved were false or misleading. In support of this argument, the U. S. Steel Defendants provided (disputed) counter evidence that: (i) U. S. Steel purportedly achieved over $70 million in benefits from RCM during the Settlement Class Period as evidenced by a project listing in U. S. Steel's Wave system, as audited by Ernst & Young, LLP; and (ii) that employees at U. S. Steel with RCM titles were being paid to purportedly implement RCM. Further, Defendants argued that any issues regarding capacity to meet demand were limited to three specific unplanned outages in early 2016 for which there was purportedly no related corrective disclosure.

The U. S. Steel Defendants have also argued that Plaintiffs could not establish the element of scienter, because the evidence did not support that any statements, even potentially misleading ones, were made with the requisite intent to defraud. The U. S. Steel Defendants further argued that Defendants Burritt's and Longhi's insider sales were not suspicious because there were legal and financial restrictions that prevented them from selling any sooner and their sales were otherwise consistent with those of other executives in the industry. The U. S. Steel Defendants

have likewise challenged Plaintiffs' theory of loss causation (and therefore recoverable damages), maintaining that the April 25th corrective disclosure did not reveal anything to the market indicating that their prior statements were false or misleading. Instead, the U. S. Steel Defendants argued that the corrective disclosures announcing U. S. Steel's Q1 2017 earnings miss and reduced fiscal 2017 financial forecast was caused by increased spending under an entirely different and previously disclosed Asset Revitalization Plan (not the failure to implement RCM) meant to work in concert with U. S. Steel's purported existing RCM.

The U. S. Steel Defendants also argued that Plaintiffs' expert's damages estimate failed to disaggregate confounding information and that only a fraction, if any, damages could possibly relate to the alleged misstatements. The U. S. Steel Defendants' expert opined that market analyst commentary in response to U. S. Steel's reduced fiscal 2017 financial guidance reflected that, at most, 45% to 50% of the reduction was attributable to the reported lower flat-rolled steel volumes and additional planned outages. ECF 322-2 at 75-76. Thus, the U. S. Steel Defendants' expert claimed that if Plaintiffs could prove such volumes and outages were related to their allegations (which was not certain, and highly disputed), the maximum amount of the stock price decline that could be attributed to the fraud would be 45% to 50%, compared to the 93.7% calculated by Plaintiffs' expert. *Id.*

In addition, the U. S. Steel Defendants argued the class should be decertified primarily on the grounds that: (i) pursuant to the recent decision in *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System,* 141 S. Ct. 1951 (2021), there was no impact on U. S. Steel's stock price from the alleged misstatements and, thus, the market for U. S. Steel stock was not efficient; and (ii) Plaintiffs were potentially inadequate or atypical. Maintaining class certification was by no means guaranteed as there are very few judicial decisions analyzing and applying the Supreme

Court's *Goldman* decision and Plaintiffs risked the possibility the Court could side with the U. S. Steel Defendants and find that the alleged RCM misstatements were too generic and, thus, had no price impact, as evidenced by the fact few analysts discussed "RCM" in their reports.

Moreover, Plaintiffs' claims would be subject to complex expert testimony offered by the U. S. Steel Defendants' experts, which would conflict with Plaintiffs' experts' analyses. Indeed, the opinions of each side's experts vary substantially, and continued litigation poses the risks that the U. S. Steel Defendants would prevail in a "battle of experts." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001). Such a battle would increase the expense and risk involved with advancing the litigation toward a positive resolution for Plaintiffs and the Settlement Class, and a jury might credit the U. S. Steel Defendants' experts and accordingly reject Plaintiffs' claims. *See In re PAR Pharm. Sec. Litig*., 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context").

The Settlement is a very strong result for the Settlement Class when balanced against those risks. The $40 million recovery is approximately 6% to 7% of estimated total estimated damages, net of Settlement Class Period common stock gains, assuming Plaintiffs prevailed on all of their arguments, and approximately 13% of recoverable damages if limited to Defendants' expert's analysis. This result exceeds the 4.2% average percentage recovery in securities class actions settled in 2021 and 2.3% average percentage recovery in securities class actions settled in 2021-2020 where market cap losses exceed $1 billion. *See Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements: 2021 Review and Analysis*, at 6, fig. 5, (Cornerstone Research 2022), Hopkins Decl., Ex. 2.

Given the complexity of this case and the risks and delay inherent in continued litigation,

the $40 million Settlement is an excellent result. Taking into account that the case has been litigated for nearly five years, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness in light of the attendant risks and uncertainties of continued litigation, and should be preliminarily approved. *See Girsh*, 521 F.2d at 157.

### C.      The Other Rule 23(e)(2) Factors Are Met

Rule 23(e)(2) also enumerates three additional factors for the Court to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (am. 2018). These factors also weigh in favor of preliminary approval.

### 1.   The Proposed Method for Distributing Relief Is Effective

As discussed below in §VI, the proposed method of notice and claims administration (Rule 23(e)(2)(C)(ii)) is rigorous and commonly utilized in securities class action settlements. The notice plan includes: (i) direct mail notice to all those who can be identified with reasonable effort, including those persons and entities who received the Class Notice in 2020, (ii) direct e-mail notification to hundreds of financial institutions that regularly monitor proposed securities class actions, and (iii) publication of the Summary Notice in *Investor's Business Daily*, and a national online newswire service. In addition, the case-specific website established for the Class Notice will be updated such that relevant deadlines and key Settlement documents, including the Stipulation, Notice, Claim Form, and Preliminary Approval Order, will be prominently posted.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was

prepared with the assistance of Plaintiffs' damages expert. Calculations were based primarily on the expert's event-study analysis estimating the amount of artificial inflation in the prices of U. S. Steel common stock and call options during the Settlement Class Period. A thorough claim-review process, including how deficiencies will be addressed, is also explained in the Notice.

### 2.  Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Settlement provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses no later than 42 days prior to the Final Approval Hearing. *See* Preliminary Approval Order, ¶24. As set forth in the proposed Notice, Plaintiffs will request attorneys' fees not to exceed one third of the Settlement Fund, litigation expenses not to exceed $3,300,000 and awards to Plaintiffs in connection with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4) not to exceed $70,000 for Lead Plaintiff Vrakas and $10,000 for Plaintiff Reed. This fee request is consistent with attorneys' fees regularly approved in connection with similar PSLRA securities class action settlements within this District and the Third Circuit. *See, e.g., Chludzinski v. NWPA Pizza, Inc*., *et al*., Case No. 1:20-cv-163 (W.D. Pa.) (Bissoon, J.) at Dkt. No. 43 (approving one-third of settlement fund in attorneys' fees and noting "[t]his is the standard amount awarded in district courts within the Third Circuit"); *Conley v. Cabot Oil and Gas Corp*., Case No. 2:17-cv-01391 (Bissoon, J.) at Dkt. No. 59 (granting fees of 33% of settlement fund); *Bell v. Fore Sys.*, No. 97-1265, 2003 U.S. Dist. LEXIS 26676, at *11 (W.D. Pa. Dec. 22, 2003) (awarding one third fee as fair and reasonable).[7]

---

[7] *See also, e.g.*, *Whiteley v. Zynerba Pharm., Inc.*, No. 19-4959, 2021 WL 4206696, at *13 (E.D. Pa. Sep. 16, 2021) (awarding one third fee, which "is commensurate with customary percentages in private contingency fee agreements"); *Li v. Aeterna Zentaris Inc., et al.*, No. 3:14-cv-07081-PGS-TJB, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (awarding one-third fee in securities class action as "consistent" with the "rate in similarly complex litigation conducted on a contingent

Lead Counsel's notice of its maximum expense request of $3,300,000 is based on the substantial expenses that counsel incurred over nearly five years of litigation and allows for any additional expenses incurred prior to final approval. The litigation included an extensive factual investigation; written discovery from Defendants, Plaintiffs, and third parties; 47 fact and expert depositions; retention of six experts with expert discovery occurring at class certification and merits discovery and four separate mediation sessions.

### 3. The Settling Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. The parties have entered into a supplemental agreement that provides the U. S. Steel Defendants with the right to terminate the Settlement in the event that timely and valid requests for exclusion from the Settlement Class exceed the criteria set forth in the Supplemental Agreement. *See* Stipulation, ¶IV.12.2.[8]

### 4. Settlement Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), concerns whether the Settlement treats Settlement Class Members equitably. As discussed above, all Settlement Class Members are treated equitably under the terms of the Stipulation, which provides that each Settlement Class Member that properly submits a valid Claim Form will receive a *pro rata* share of the Net Settlement Fund, calculated under the Plan of Allocation.

---

basis"); *Bodnar v. Bank of Amer., N.A.*, No. 14-3224, 2016 WL 4582084, at *5 (E.D. Pa. Aug. 4, 2016) (33% fee is "consistent with similar awards throughout the Third Circuit"); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08–CV–285 (DMC), 2010 WL 547613, at *9-11 (D.N.J. Feb. 9, 2010) (awarding one-third fee noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases")

[8] As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with the Stipulation, the Supplemental Agreement may be submitted to the Court *in camera* upon order of the Court.

The Settlement satisfies each factor identified under Rule 23(e)(2) and the Third Circuit's *Girsh* opinion. Moreover, pursuant to *Warfarin Sodium*, 391 F.3d at 535, the Settlement is entitled to a presumption of fairness. Given the litigation risks involved, and the complexity of the underlying issues, the $40 million recovery is an excellent one. Therefore, Plaintiffs and Lead Counsel respectfully submit that the Settlement is fair, reasonable and adequate, preliminary approval should be granted, and notice of the Settlement should be sent to the Settlement Class.

## VI.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

### A.     Retention of A.B. Data as Claims Administrator

The Court previously approved the appointment of A.B. Data to provide the Class Notice in 2020. ECF No. 225. A.B. Data is an experienced administrator for class action settlements like this and has implemented many successful claims administration programs. *See* www.abdata.com. Moreover, having A.B. Data continue to serve as claims administrator will provide efficiencies in the process and, thus, result in lower costs to the Settlement Class. Plaintiffs request that the Court re-appoint A.B. Data as Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Claim Forms, and to administer the Settlement.

### B.     Proposed Notice Procedures

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be settled, dismissed, or compromised without the approval of the court, and notice of the proposed settlement, dismissal, or compromise shall be given to all members of the class in such a manner as the court directs. Fed. R. Civ. P. 23(e). The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Here, the parties have negotiated the form of the notices to be disseminated to all identified potential Settlement Class Members. The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3, respectively.

The proposed Notice apprises Settlement Class Members of (among other things) the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, and the claims that will be released in the Settlement. The Notice also: (i) advises that a Settlement Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Settlement Class Members under Rule 23(e)(3); (iii) states the procedures and deadline for Settlement Class Members to object to the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for Settlement Class Members to submit a Claim Form to recover from the Settlement; and (v) provides the date, time, and location of the Final Approval Hearing. The parties further propose to supplement the Notice with the Summary Notice, to be published once in the *Investor's Business Daily* and once via a national online newswire service. *See supra*, at §V.C.1.

The Notice and Summary Notice also satisfy the PSLRA's specific notice requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-common share basis; (ii) that the parties do not agree on the average amount of damages per common share that would be recoverable in the event Plaintiffs prevailed at trial, and stating the issue(s) on which the parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses; (iv) the amount, on an average per-common share basis, of the Lead Counsel's requested fees, Litigation Expenses, and requests for costs and expenses reasonably incurred by Plaintiffs, if approved; (v) contact information for Lead Counsel; and (vi)

the reasons the parties are proposing the Settlement.

The proposed plan for providing notice is the same method used in numerous other securities class actions, including in connection with the Class Notice in this Action. Courts routinely find that comparable notice programs represent the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Jones*, 2007 WL 2085357, at *5 ("the proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members"). For all of the foregoing reasons, the notice program should be approved by the Court.

## VII.       PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Final Approval Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2). *See Manual for Complex Litigation, supra*, at §21.63.

Concurrent with this motion, Plaintiffs have submitted a proposed agreed-upon Preliminary Approval Order ("PAO"), which was negotiated with the U. S. Steel Defendants, setting forth the proposed schedule of Settlement-related events through final approval. Specifically, Plaintiffs propose the following schedule:

| | |
|---|---|
| Date for commencing the mailing of the Notice and Claim Form to the Settlement Class (the "Notice Date") | 15 business days after the PAO is signed and entered |
| Deadline for publishing the Summary Notice | 10 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' request for reasonable costs and expenses in connection with their representation of the Settlement Class | 42 days prior to the Final Approval Hearing |
| Deadline for filing objections or submitting requests for exclusion | 28 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers | 14 calendar days prior to the Final Approval |

| | Hearing |
|---|---|
| Deadline for Lead Counsel to file with the Court and serve on the U. S. Steel Defendants' counsel proof, by affidavit or declaration, of mailing and publishing the Notice | 7 calendar days prior to the Final Approval Hearing |
| Deadline for the U. S. Steel Defendants to serve on Lead Counsel and file with the Court proof, by affidavit or declaration, compliance with the notice requirements of CAFA | 7 calendar days prior to the Final Approval Hearing |
| Deadline for Class Members to file Proof of Claim Forms | 90 days after the Notice Date |
| Final Approval Hearing | At least 120 calendar days after the PAO is signed and entered, at the Court's convenience |

This proposed schedule complies with Rule 23 and will allow Settlement Class Members to recover from the Settlement in a timely fashion.

## VIII.      CLASS CERTIFICATION

The Court certified the class as a class action on December 31, 2019. ECF No. 215. For the reasons set forth in Plaintiffs' class certification motion and the Court's class certification order, this case meets all the prerequisites of Rule 23. ECF Nos. 182-84, 215. Defendants' Motion for Class Decertification is *sub judice*. Plaintiffs therefore respectfully request that the Court finally certify, for settlement purposes only, the Settlement Class in connection with the Settlement. While Plaintiffs recognize there is some risk relating to the U. S. Steel Defendants' pending decertification motion as is always the case in litigation (Section V.B.), the Settlement reflects that risk and, thus, the Settlement Class should be certified for Settlement purposes.

## IX.      CONCLUSION

Plaintiffs have obtained an outstanding result for the Settlement Class, and now respectfully request that the Court grant their motion for preliminary approval and enter the Settling Parties' proposed Order Preliminarily Approving Settlement and Providing for Notice, which is attached as Exhibit A to the Stipulation.

DATED: May 20, 2022            Respectfully submitted,

By: ***/s/ Vincent Coppola***
Vincent Coppola, Esquire
Penn. Attorney #50181
513 Court Place
Pittsburgh, PA 15219

*Liaison Counsel for Plaintiffs and the Settlement Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
David Jaynes (admitted *pro hac vice*)
Michael J. Keating (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06901
Telephone: 203-992-4523
Facsimile: 212-363-7171
shopkins@zlk.com
gpotrepka@zlk.com
djaynes@zlk.com
mkeating@zlk.com

*Lead Counsel for Plaintiffs and the Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022, I served a copy of the foregoing document on all appearing counsel through the Court's ECF system.

*/s/ Vincent Coppola*
Vincent Coppola